UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EARL HAYES,

                              Plaintiff,

         -v-

COUNTY OF SULLIVAN,

                              Defendant.

Case Nos. 07-CV-7667 (KMK)
          09-CV-2071 (KMK)

<u>OPINION AND ORDER</u>

---

EARL HAYES,

                              Plaintiff,

         -v-

DETECTIVE JASON GORR of the Sullivan County
Sheriff's Dep't, DETECTIVE DON STARNER of the
Sullivan County Sheriff's Dep't, DEPUTY
PATROLMAN RICHARD MORGAN of the Sullivan
County Sheriff's Dep't, COLONEL SMITH of the
Sullivan County's Sheriff's Dep't, LIEUTENANT
COLE of the Sullivan County Sheriff's Dep't,
CORPORAL GARDNER of the Sullivan County
Sheriff's Dep't, THE SULLIVAN COUNTY
SHERIFF'S DEP'T, and THE COUNTY OF
SULLIVAN,

                              Defendants.

---

<u>Appearances:</u>

Earl Hayes
Sing Sing Correctional Facility
Ossining, New York
*Pro Se Plaintiff*

Michael Davidoff, Esq.
Drew, Davidoff & Edwards Law Offices, LLP
Monticello, New York
*Counsel for County Defendants*

Samuel S. Yasgur, Esq.
County of Sullivan
Monticello, New York
*Counsel for Individual Defendants*

KENNETH M. KARAS, District Judge:

Earl Hayes ("Plaintiff") brings this action against the County of Sullivan ("County"), the

Sullivan County Sheriff's Department ("Sheriff's Department") (collectively, "County

Defendants"), and individual Defendants Detective Jason Gorr ("Detective Gorr" or "Gorr"),

Detective Don Starner ("Detective Starner" or "Starner"), Deputy Patrolman Richard Morgan

("Deputy Morgan" or "Morgan"), Colonel Harold Smith, Jr. ("Colonel Smith" or "Smith"),

Lieutenant Cole ("Lieutenant Cole" or "Cole"), and Corporal Harry Gardner ("Corporal

Gardner" or "Gardner") in their official and individual capacities (collectively, "Individual

Defendants"), under 42 U.S.C. § 1983 ("§ 1983").  Plaintiff alleges that his federal constitutional

rights were violated before and during his arrest on October 26, 2005, and in the court

proceedings leading up to his guilty plea, which he entered on March 2, 2007.  Plaintiff also

alleges that his federal constitutional rights were violated during his incarceration at the Sullivan

County Jail.  Defendants have moved for summary judgment.  For the reasons stated herein, the

motions are granted in part and denied in part.

I. Background

A. Facts

1. Plaintiff's Arrest

Plaintiff was arrested on October 26, 2005 for driving with a suspended license and for possession of a forged instrument.  (Aff. of Det. Jason Gorr in Supp. of Mot. for Summ. J. ("Gorr Aff.") ¶ 15.)  The Parties dispute the chain of events which led to Plaintiff's arrest.[1]

Defendants' version of the facts starts with the decision of Judge Burton Ledina, the Sullivan County Court judge who presided over Plaintiff's suppression hearing on December 21, 2006 and January 9, 2007.  On February 9, 2007, Judge Ledina issued a nine-page decision,

---

[1] The Court notes that Plaintiff failed to submit a Local Rule 56.1 Statement of Material Facts in response to Defendants' summary judgment motions.  Under the law of the Second Circuit, the facts in uncontroverted statements made pursuant to Local Civil Rule 56.1 Statements may be deemed admitted as a matter of law.  *See Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998).  However, a district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules and may "opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement."  *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks omitted).  In light of Plaintiff's pro se status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record.

The Court also notes that Defendants' Rule 56.1 Statements are not in compliance with the requirement that "[e]ach statement by the movant . . . pursuant to Rule 56.1(a) and (b) . . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."  S.D.N.Y. & E.D.N.Y. Local R. 56.1(d), *available at* http://nysd.uscourts.gov/rules/rules.pdf; *see also In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 85 n.7 (2d Cir. 2008) (noting that "defendants' approach to compliance with this rule has rendered [the court's] task of determining . . . whether there are genuine issues of disputed material fact considerably more difficult than it should have been."); *Holtz*, 258 F.3d at 73 ("[D]istrict courts in the Southern and Eastern Districts of New York have interpreted current Local Rule 56.1 to provide that where there are no[] citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." (second alteration in original) (internal quotation marks omitted)).  Although it is within the discretion of the Court to disregard the entirety of Defendants' Rule 56.1 statements, the Court has conducted an independent review of the record to determine which assertions are supported by other evidence.

3

denying Plaintiff's suppression motion, and finding that Detective Gorr and Deputy Morgan had probable cause to arrest Plaintiff on October 26, 2005.  *See People v. Hayes*, Indictment No. 13-2006 (N.Y. Cnty. Ct. Feb. 9, 2007) ("*Suppression Order*").

As found by Judge Ledina, on October 26, 2005, a security officer at the Wal-Mart store in the town of Thompson contacted Detective Starner of the Sullivan County Sheriff's Department, and informed him that an individual had attempted to purchase a cell phone using a credit card where the name printed on the front of the card did not match the name which appeared on the register receipt after the card was scanned.  (*Suppression Order* 2; Statement of Material Facts Pursuant to S.D.N.Y. Civ. R. 56.1 ("Indiv. Defs.' 56.1") ¶¶ 15-16; Aff. of Det. Don A. Starner in Supp. of Mot. for Summ. J. ("Starner Aff.") ¶¶ 8-9.)  The name printed on the front of the card was "Earl Hayes," but the name which appeared on the receipt was "Joblanski Samuels."  (*Suppression Order* 2; Indiv. Defs.' 56.1 ¶ 16; Gorr Aff. ¶ 15.)  Starner requested that Detective Gorr, also of the Sullivan County Sheriff's Department, respond to the call.  (Indiv. Defs.' 56.1 ¶ 17; Starner Aff. ¶ 10.)  Upon arrival at the Wal-Mart, Gorr met with Joe Brown, a Wal-Mart loss prevention associate, who showed him a copy of the receipt bearing the name Joblanski Samuels.  (*Suppression Order* 2; Gorr Aff. ¶ 15.)[2]  During this meeting, Gorr and Brown were advised that the individual had re-entered the store and was purchasing a laptop computer.  (*Suppression Order* 2; Indiv. Defs.' 56.1 ¶ 18.)  Using the store's video surveillance equipment, security personnel pointed out the individual, Plaintiff Earl Hayes, to Gorr.  (*Id.*)  Gorr followed Plaintiff out of the store and observed him place the laptop in the trunk of a car

---

[2] Plaintiff points out that in Detective Gorr's answer to Plaintiff's interrogatories, Gorr responded that he met with an individual named Steve Forshay at the Wal-Mart on October 26, 2005, at approximately 1:50 p.m., and Gorr did not mention meeting with Joe Brown.  (Defs.' Resp. to Pl.'s Interrogs. Nos. 3-4 (No. 07-CV-7667, Dkt. No. 34).)

and open the driver's side door.  (*Suppression Order* 2; Gorr Aff. ¶ 15; Indiv. Defs.' 56.1 ¶ 19.)

Gorr then approached Plaintiff, identified himself, and told Plaintiff that he wanted to speak to

him regarding the credit card Plaintiff had used in the Wal-Mart.  (*Suppression Order* 2; Gorr

Aff. ¶ 15.)  Gorr asked Plaintiff for identification and Plaintiff produced a New York State

identification card in the name of Earl Hayes.  *Suppression Order* 2-3.  According to Gorr,

Plaintiff explained that there had been a problem with the cashier and produced several credit

cards, identifying a Pay Pal card as the one he had used in the store.  (*Suppression Order* 3; Gorr

Aff. ¶ 15; Indiv. Defs.' 56.1 ¶ 23.)[3]  While Gorr was speaking to Plaintiff in the parking lot,

Deputy Morgan, of the Sullivan County Sheriff's Department, arrived as back-up.  (*Suppression

Order* 3; Aff. of Richard Morgan in Supp. of Mot. for Summ. J. ("Morgan Aff.") ¶¶ 6-8.)

Deputy Morgan ran a check of Plaintiff's driver's license and it came back over the radio that

Plaintiff's license was suspended.  (Indiv. Defs.' 56.1 ¶ 24; Suppression Hr'g Tr. 19:20-25,

138:13-20, 141:4-7, Dec. 21, 2006.)  According to Defendants, Plaintiff then told Gorr and

Morgan that he had not driven the car and that a friend named "Mark" had driven him to the

Wal-Mart.  (*Suppression Order* 3; Indiv. Defs.' 56.1 ¶ 25; Gorr Aff. ¶ 15; Morgan Aff. ¶ 10.)

Gorr asked Morgan to enter the Wal-Mart and page Mark.  (Indiv. Defs.' 56.1 ¶ 25; Morgan Aff.

---

[3] Plaintiff makes much of the fact that on October 27, 2005, when Gorr swore out the felony complaint against Plaintiff, he stated that Plaintiff had attempted to use a Chase credit card (not a Pay Pal card) to purchase the cell phone in the Wal-Mart.  (Pl.'s Aff. in Opp'n to [Indiv.] Defs.' Mot. For Summ. J. ("Pl.'s Opp'n to Indiv. Defs.") ¶ 13.)  Plaintiff claims that this shows that Gorr's recounting of the events is false, and that Plaintiff in fact did not offer to show him a credit card in the Wal-Mart parking lot.  However, at the suppression hearing, Gorr testified that Wal-Mart had provided him with an internal receipt which showed the credit card number of the card that Plaintiff had allegedly attempted to use to purchase the cell phone. (Suppression Hr'g Tr. 38:18-39:24, 43:4-25, Dec. 21, 2006.)  This credit card number did not match the credit card number of the Pay Pal card which Gorr claimed Plaintiff had shown him in the Wal-Mart parking lot.  (*Id.*)

¶ 11.)  According to Morgan, Mark was paged twice by store personnel and never appeared. (Morgan Aff. ¶¶ 12-13.)

According to Gorr, Plaintiff then used his cell phone to call his then-fiancee Dina Tomlinson ("Tomlinson"), who was listed as the owner of the car.  Gorr claims that he asked to speak with Tomlinson and she informed Gorr that Plaintiff had been alone in the car when he left her. (*Suppression Order* 3; Indiv. Defs.' 56.1 ¶¶ 26-27; Gorr Aff. ¶ 15.)  Gorr and Plaintiff then went into the Wal-Mart and Plaintiff stayed with Morgan while Gorr entered the store's security office to watch surveillance videos of the parking lot.  *Suppression Order* 3.  According to Gorr, the surveillance videos showed Plaintiff parking the vehicle and walking into the Wal-Mart store alone. (*Suppression Order* 3; Indiv. Defs.' 56.1 ¶ 28; Gorr Aff. ¶ 15.)[4]  Gorr then arrested Plaintiff for driving with a suspended license and for possession of a forged instrument (the credit card). (*Suppression Order* 3; Indiv. Defs.' 56.1 ¶ 30; Gorr Aff. ¶ 15.)  Plaintiff was searched and several items including papers, an activation slip, shopping cards, gift cards, and credit cards were found on his person. (*Suppression Order* 3-4; Indiv. Defs.' 56.1 ¶ 31; Gorr Aff. ¶ 15; Suppression Hr'g Tr. 27:3-31:8, Dec. 21, 2006.)  Tomlinson arrived to claim her car

_____

[4]  At the December 21, 2006 suppression hearing, Gorr was shown three video clips from the Wal-Mart security cameras.  Gorr testified that the first clip showed an individual wearing a dark colored coat with a white stripe on the sleeve park and exit a car in the Wal-Mart parking lot. (Suppression Hr'g Tr. 87:4-24, Dec. 21, 2006.)  Gorr testified that at this point, the individual's features were not discernible. (*Id.* at 87:18-88:6.)  Gorr testified that the second clip showed the individual wearing the dark jacket with the white stripe entering the Wal-Mart. (*Id.* at 89:21-92:16.)  Gorr testified that the third clip showed the person in the dark jacket with the white stripe pushing a shopping cart inside the Wal-Mart, and at that point, Gorr was able to identify the individual in the footage as Plaintiff. (*Id.* at 94:15-95:22.)  Gorr further testified that Plaintiff was wearing a black coat with a white stripe down the side on the day of his arrest. (*Id.* at 100:16-25.)  Gorr also stated that the videos are date and time stamped. (*Id.* at 101:17-19.)  In his Affidavit, Morgan states that Gorr viewed a tape in the Wal-Mart security office which showed a man with a distinctive white stripe on the sleeve of his jacket getting out of the subject car, and that the jacket matched Plaintiff's. (Morgan Aff. ¶¶ 14-15.)

and denied ownership of the items in the car.  She granted Gorr her written consent to search the car and pursuant to the search, Gorr found two laptops (one that was turned on and the one that had just been purchased and placed in the trunk), a phone, and various documents and receipts. (*Suppression Order* 4; Indiv. Defs.' 56.1 ¶¶ 32-33; Gorr Aff. ¶ 15; Suppression Hr'g Tr. 33:3-37:2, Dec. 21, 2006.)

Plaintiff, however, presents a very different version of the events leading up to his arrest. According to Plaintiff, the Wal-Mart parking lot encounter with Detective Gorr began at approximately 2:00 pm on October 26, 2005.  (Pl.'s Aff. in Opp'n to [Indiv.] Defs.' Mot. For Summ. J. ("Pl.'s Aff. in Opp'n to Indiv. Defs.") ¶ 11.)  Gorr approached Plaintiff, identified himself, and asked Plaintiff to produce identification.  (*Id.* ¶ 12.)  Plaintiff then handed Gorr his Department of Motor Vehicles-issued identification card.  (*Id.*)  Plaintiff claims that Gorr then demanded that Plaintiff empty his pockets, which Plaintiff refused to do, and that Plaintiff asked for his identification back.  (*Id.*)  When Gorr allegedly refused to return Plaintiff's identification, Plaintiff claims that he attempted to walk away from Gorr and leave the parking lot.  (*Id.*) According to Plaintiff, Gorr then grabbed him, struck him in the chest, and refused to let him leave.  (*Id.*)  Gorr then allegedly removed all the property from Plaintiff's pockets, including six credit cards, and asked Plaintiff which card he had attempted to use in the Wal-Mart.  (*Id.*) Plaintiff claims he refused to answer Gorr, who asked Morgan to "hold" Plaintiff while Gorr entered the Wal-Mart alone.  (*Id.*)  Approximately 15 to 20 minutes later, Gorr returned to the parking lot and told Plaintiff that his driver's license was suspended.  (*Id.*)  Plaintiff claims that he denied driving to the Wal-Mart, and that Morgan continued to hold Plaintiff while Gorr again went back into the Wal-Mart for approximately 20 minutes.  (*Id.*)  Plaintiff claims that when

Gorr returned, he placed Plaintiff under arrest for aggravated unlicensed operation of a motor vehicle.  (*Id.*)[5]

Gorr denies hitting Plaintiff in the chest (Gorr Aff. ¶ 9), and claims that he did not touch Plaintiff other than when he arrested Plaintiff, (Suppression Hr'g Tr. 61:12-15, Dec. 21, 2006). Gorr also claims that Plaintiff never said he wanted to leave and that Gorr never told Plaintiff that he was not free to leave before he was arrested.  (Suppression Hr'g Tr. 60:4-11, 61:8-18, 65:3-23, Dec. 21, 2006.)

After Plaintiff's arrest, Detective Starner prepared a search warrant application for Plaintiff's residence, which was granted by Judge Ledina.  (*Suppression Order* 4; Indiv. Defs.' 56.1 ¶¶ 34-35; Starner Aff. ¶¶ 13-15.)  A search of Plaintiff's residence pursuant to that warrant produced "substantial evidence of credit card forgery," including blank credit cards, a device for cloning credit cards, a computer with credit card information for other people, a number of fake driver's licenses from other states, and sheets of paper with credit card numbers from USAA Bank.  (Starner Aff. ¶ 17.)

### 2. Plaintiff's Criminal Proceedings

Plaintiff was charged on January 11, 2006 in a twenty-nine count indictment, which included thirteen counts of criminal possession of a forged instrument in the second degree, seven counts of unlawful possession of personal identification information in the second degree, one count of grand larceny in the fourth degree, one count of criminal possession of stolen

---

[5] Plaintiff therefore claims that he was searched and held by Gorr and Morgan before they had any probable cause to do so, because he was held in the parking lot while Gorr went into the Wal-Mart to inquire whether Plaintiff's driver's license was suspended.  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 13.)  It should be noted that Plaintiff's version of events conflicts with the testimony which Judge Ledina credited at Plaintiff's suppression hearing.  *See Suppression Order* 4-5.

property in the third degree, two counts of identity theft in the third degree, three counts of

identity theft in the second degree, one count of scheme to defraud in the first degree, and one

count of aggravated unlicensed operation of a motor vehicle in the second degree.  (Indiv. Defs.'

56.1 ¶ 37; *People v. Hayes*, Indictment No. 13-2006, 1-2 (N.Y. Cnty. Ct. Oct. 24, 2006) ("*Hayes

Order* (Oct. 24, 2006)").)

Plaintiff's criminal case was assigned to Judge Ledina, in the Sullivan County Court.

Plaintiff was represented by private counsel, Mr. Deveraux L. Cannick, during his criminal

proceedings.  (Indiv. Defs.' 56.1 ¶ 38.)[6]  On August 25, 2006, Plaintiff's counsel filed an

omnibus motion with the County Court seeking to have the indictment dismissed and seeking

several pre-trial hearings.  (*Id.* ¶ 39; *Hayes Order* 2 (Oct. 24, 2006).)  On October 24, 2006,

Judge Ledina dismissed several counts of the indictment, scheduled a *Mapp/Dunaway* hearing

for the possible suppression of seized evidence, and scheduled a *Huntley* hearing for the possible

suppression of post-arrest statements ("suppression hearing").  (Indiv. Defs.' 56.1 ¶ 40; *Hayes

Order* 5-7 (Oct. 24, 2006).)

The suppression hearing was held on December 21, 2006 and January 9, 2007.  (Indiv.

Defs.' 56.1 ¶ 41.)  Gorr, Starner, and Morgan testified at the suppression hearing on December

21, 2006, while Plaintiff called one witness, Tressa Evans, to testify on January 9, 2007.  Mr.

Cannick, Plaintiff's counsel, had the opportunity to cross examine Gorr, Starner, and Morgan.

(Suppression Hr'g Tr., Dec. 21, 2006.)  On January 31, 2007, Mr. Cannick submitted an

affirmation in support of the suppression motion, arguing that Plaintiff "was arrested without

probable cause and all items seized from him subsequent to that illegal arrest must be suppressed

---

[6] Plaintiff has a lawsuit pending in this Court against Mr. Cannick and his firm Aiello &
Cannick.

as 'fruits of the poisonous tree.'" (Affirmation in Supp. of Suppression Mot., unnumbered page 1 (Jan. 31, 2007).) Mr. Cannick highlighted alleged discrepancies in the testimony of Gorr, Starner and Morgan, and argued that contrary to Gorr's testimony, the Wal-Mart video clips did not show Plaintiff driving the car. (*Id.* at unnumbered pages 1-3.) He also argued for the suppression of Plaintiff's post-arrest statements (*id.* at unnumbered page 1), but did not challenge the validity of the search warrant used to search Plaintiff's residence.

On February 9, 2007, Judge Ledina denied Plaintiff's motion to suppress and held that Detective Gorr had probable cause to arrest Plaintiff on October 26, 2005. *Suppression Order* 2, 7-8. Judge Ledina found:

> The defendant argues that there was no probable cause for the arrest, and that the seized evidence incidental thereto must be suppressed. He maintains that there was no probable cause for the arrest for unlicensed operation because Detective Gorr had never seen him driving, either directly, or in the store video tapes. However, prior to the arrest for unlicensed operation, Detective Gorr had observed Defendant put purchases in the car and walk up to and open the driver's door. The defendant's story about having been driven to the store by Mark proved to be disingenuous. Mark never appeared, and Dina Tomlinson, the owner of the car, informed Detective Gorr that the defendant had left her alone in her vehicle. Finally, the Wal-Mart video showed an individual wearing a dark jacket with a distinctive white stripe on the sleeve exit the car, and no one else. The defendant was wearing a dark jacket with a white stripe on the sleeve. There is thus more than ample probable cause to have arrested defendant for operating a vehicle with a suspended license.
>
> There was also ample probable cause to have arrested the defendant on the charge of possession of a forged credit card. The initial call from the store security department indicated that a card bearing the name of Earl Hayes had been rejected. The defendant was identified as having attempted to use the card in question, and admitted such use when questioned. He showed the detective the card with "Earl Hayes" named on the front as the cardholder, but the store printout showed that the card had been issued to one Joblanski Samuels.

*Suppression Order* 4-5. Judge Ledina thus ruled that all of the items seized from Plaintiff's person and from Tomlinson's vehicle would be admissible at trial, as would Plaintiff's pre- and

post-arrest statements. *Suppression Order* 6-8. Judge Ledina also ruled that although Plaintiff did not challenge the validity of the search warrant used to search his home, to the extent that the issue was raised at the suppression hearing, "defendant has not presented any evidence showing that the warrant was improperly issued or executed," and thus "the evidence seized thereunder is admissible." *Suppression Order* 9.

On March 2, 2007, Plaintiff pleaded guilty to three counts of criminal possession of a forged instrument in the second degree, one count of criminal possession of stolen property in the third degree, one count of a scheme to defraud, and one count of identity theft in the second degree. (Indiv. Defs.' 56.1 ¶ 45; Plea Tr. 6:8-7:11, 26:5-27:24, Mar. 2, 2007.) This plea was entered into by Plaintiff in full satisfaction of the indictment and with the understanding that Plaintiff would be sentenced to imprisonment for five and a half to eleven years. (Plea Tr. 2:10-19.) As part of the plea agreement, and in consideration for the dismissal of the other eighteen counts of the indictment, Plaintiff agreed to waive his right to appeal. (*Id.* at 2:20-4:8.)

At the plea colloquy, Judge Ledina informed Plaintiff of the constitutional rights that he would be foregoing by pleading guilty, and confirmed that Plaintiff understood the implications of his guilty plea. (*Id.* at 7:8-13:9.) Specifically, Judge Ledina informed Plaintiff that he would be giving up his right "to challenge the conduct of police officers in connection with obtaining evidence" (*id.* at 11:12-16), would be giving up the right to appeal his conviction to a higher court (*id.* at 11:17-12:18), and would "be foreclosed forever from complaining of any errors that might have occurred from the date of the crime involved right through to the time of sentencing," (*id.* at 12:19-13:1). Plaintiff indicated that he understood Judge Ledina and was entering into the plea agreement and waiver of right to appeal of his own free will. (*Id.* at 10:4-

11

13:9.)[7]  After having Plaintiff describe, in his own words, what he had done in relation to each

---

[7] The written Waiver of the Right to Appeal was signed by Plaintiff in open court (Plea Tr. 11:22-12:18, Mar. 2, 2007), and reads as follows:

> I, the undersigned defendant, in consideration of and as part of a favorable plea and sentencing agreement being entered into, hereby acknowledge that I have been advised of, and waive, all of the rights below.
>
> I acknowledge that I have been advised of, and waive, my right to appeal from the judgment of conviction or sentence.  This includes, but is not limited to, my right to prosecute the appeal as a poor person and to have an attorney assigned in the event I am indigent, and to submit a brief and/or have argument before the appellate court on any issue related to the conviction and sentence.
>
> This waiver also applies to all issues that may be validly waived.  This includes, but is not limited to, any issue regarding the effectiveness of counsel prior to my plea in this case and any issue that may arise with regard to the imposition of sentence.  I also waive any issue that may arise, if applicable, with regard to my adjudication as a second felony offender . . . .  I also understand that if I fail to live up to the conditions imposed by the court pending sentencing or as part of the sentencing itself, I could receive an increased sentence, and I hereby waive an issue that may arise regarding the imposition or terms of the increased sentence.
>
> In addition to the above issues, my waiver also includes, but is not limited to:
> 1)   the form, content and legal sufficiency of the indictment(s)/superior court information;
> 2)   any decision and/or order of the Court on any motions made, or pending;
> 3)   the voluntariness of any statements made by myself or the constitutionality of any identification procedure conducted;
> 4)   the sufficiency of the plea allocution;
> 5)   any other matters which I may have an appeal as of right or otherwise in any State or Federal Court or may collaterally attack in any State or Federal Court, specifically, that I have been advised of my right to file motions to vacate my conviction and to set aside my sentence under CPL Article 440 and 330, my rights to file habeas corpus petitions to challenge my conviction in state and federal court, Writs of Corum Nobis and any right I may have to file any motions or applications attacking my conviction in state or federal court.  This waiver applies to all issues that may be validly waived.
>
> I waive all these rights voluntarily, knowingly and intelligently without coercion by anyone, after being informed of them by my attorney standing beside me.  I have had a full opportunity to discuss these matters with my attorney and to raise

count to which he was pleading guilty, Judge Ledina accepted Plaintiff's guilty plea. (*Id.* at 13:10-31:17.)

On April 25, 2007, the date set for sentencing, Plaintiff submitted a pro se motion to withdraw his guilty plea, claiming ineffective assistance of counsel. (Indiv. Defs.' 56.1 ¶ 49; *People v. Hayes*, Indictment No. 13-2006, 1-2 (N.Y. Cnty. Ct. Aug. 17, 2007) ("*Order Denying Motion to Withdraw Plea*").) Plaintiff claimed that his counsel was ineffective for his handling of the suppression hearing, so Judge Ledina allowed Mr. Cannick to withdraw as counsel. *Order Denying Motion to Withdraw Plea* 2. The court assigned another attorney, Ms. Donna Lasher, to assist Plaintiff in preparing his reply to the District Attorney's response to his motion. (Indiv. Defs.' 56.1 ¶ 49; *Order Denying Motion to Withdraw Plea* 2.) Judge Ledina found that Plaintiff's claims against Mr. Cannick were "based for the most part on [Plaintiff's] unsupported allegations of events that were gone into and determined against him at the suppression hearing," and that nevertheless at the plea hearing, Plaintiff swore that he had discussed the plea with counsel and was satisfied with his counsel's services. *Order Denying Motion to Withdraw Plea* 4. Judge Ledina also found significant that "during the plea colloquy, [Plaintiff] specifically waived his right to challenge the conduct of the police in collecting evidence against him," admitted his guilt, and at no time since then, had he claimed innocence. *Id.* at 4-5. "Rather, [Plaintiff] . . . argued that he might have a defense of illegal search and seizure." *Id.* at 5. Judge Ledina denied Plaintiff's motion to withdraw his guilty plea, finding nothing in the record to indicate that counsel was ineffective in connection with the plea process. *Id.* at 4-5.

---

them with the court, and any questions I may have had have been answered to my satisfaction. I am waiving my right to appeal to mark the end of my case.

(Indiv. Defs.' 56.1 ¶ 46; Waiver of Right to Appeal, Indictment No. 13-2006, Mar. 2, 2007.)

Plaintiff was sentenced before Judge Ledina on August 28, 2007.  (Sentencing Tr., Aug. 28, 2007.)  At the sentencing, during which Plaintiff was represented by Ms. Lasher, Plaintiff accused Gorr of having committed perjury at the suppression hearing (*id.* at 12:22-13:23, 15:8-17), accused the prosecutor, Mr. James R. Farrell, and Judge Ledina of taking no action regarding Gorr's alleged perjury (*id.* at 15:18-16:21), and accused Mr. Cannick of lying and not carrying out his responsibilities as a defense attorney, (*id.* at 16:22-27:20).  Judge Ledina, having already denied Plaintiff's motion to withdraw his guilty plea, sentenced Plaintiff to a term of imprisonment of five and half to eleven years, in accordance with the negotiated plea bargain and sentencing agreement.  (*Id.* at 33:5-8.)

On October 16, 2007, Plaintiff moved pursuant to New York Criminal Procedure Law § 440.10 (§ 440.10) to vacate his judgment of conviction, claiming fraud and ineffective assistance of counsel.  Judge Ledina ruled that §440.10(1)(b), which requires a judgment to be vacated where it was "procured by duress, misrepresentation or fraud on the part of the court or a prosecutor," was inapplicable because Plaintiff provided no evidence of such duress, misrepresentation, or fraud.  *People v. Hayes*, Indictment No. 13-2006, 2 (N.Y. Cnty. Ct. Jan. 9, 2008) ("*Order Denying §440.10 Motion*").  Judge Ledina also noted that Plaintiff had waived his right to challenge the result of the suppression hearing, that such a right is waivable, and that it was "knowingly and voluntarily" waived.  *Id.* at 5.  Regarding Plaintiff's ineffective assistance of counsel claim, Judge Ledina ruled that Plaintiff had previously raised, and the court had previously denied, the same arguments in Plaintiff's motion to withdraw his guilty plea. *Id.* at 2-4.  Therefore, because "the record clearly indicates that there was no ineffectiveness of counsel connected with the plea process," and because Plaintiff knowingly and voluntarily

14

waived his right to challenge the actions of police with respect to their obtaining evidence, Judge

Ledina denied Plaintiff's § 440.10 motion.  *Id.* at 4-5.[8]

On January 9, 2008, Plaintiff filed a motion requesting that the Judge Ledina recuse

himself from deciding his § 440.10 motion and that the action be transferred to the Bronx or

New York County Supreme Court, and, on January 28, 2008, Plaintiff moved to reargue/renew

the court's denial of his § 440.10 motion.  Judge Ledina addressed both motions in an order

dated April 2, 2008.  Judge Ledina declined to recuse himself or transfer the case, finding that

there had been neither impropriety nor the appearance of impropriety in any of the court's

rulings.  *People v. Hayes*, Indictment No. 13-2006, 4 (N.Y. Cnty. Ct. Apr. 2, 2008) ("*Order*

*Denying Recusal/Reconsideration*").  "That some rulings were made against [Plaintiff] does not

show that the Court was partial, the rulings having been made on the basis of applicable law and

procedure."  *Id.* at 3-4.  Judge Ledina then denied Plaintiff's motion for reargument/renewal of

his § 440.10 motion as without merit, as Plaintiff made the same arguments he had previously

made, and there was "no showing that the Court misapprehended the law or misapplied the facts

in its prior decision."  *Id.* at 4-5.

On December 5, 2008, Plaintiff again moved the County Court under § 440.10, alleging

that the prosecution presented false testimony at the suppression hearing.  Plaintiff also asked the

court again to recuse.  Judge Ledina denied both requests in an Order dated April 8, 2009.  Judge

Ledina again highlighted, as he had at length in the first § 440.10 decision, that Plaintiff

knowingly waived his right to appeal, which included all grounds for appeal that could be validly

waived.  *People v. Hayes*, Indictment No. 13-2006, 3 (N.Y. Cnty. Ct. Apr. 8, 2009) ("*Second*

---

[8]  Plaintiff also specifically waived his right to apply for a vacature of his conviction
under CPL § 440.10 when he signed the Waiver of Right to Appeal.

*Order Denying § 440.10 Motion*"). Plaintiff's waiver of rights included the waiver of the right to challenge his conviction under § 440.10, and also the waiver of the right to challenge the outcome of the suppression hearing. *Id.* Judge Ledina also rejected Plaintiff's ineffective assistance of counsel argument for the same reasons he had rejected it previously in denying Plaintiff's motion to withdraw his guilty plea, Plaintiff's initial § 440.10 motion, and Plaintiff's motion for reargument of the denial of his initial § 440.10 motion. *Id.* at 3-4.

Although Plaintiff had waived his right to appeal, he filed an appeal with the Appellate Division challenging the County Court's denial of his motion to withdraw his guilty plea and his sentencing on August 28, 2007. *People v. Hayes*, 896 N.Y.S.2d 225 (App. Div. 2010). The Appellate Division held that "[a]s a result of his knowing, voluntary and intelligent waiver of his right to appeal, [Plaintiff] has given up his right to challenge the County Court's ruling on his suppression motion." *Id.* at 227 (citations omitted). The court found no support in the record for Plaintiff's contention that the waiver was the result of coercion, "particularly considering the court's thorough colloquy and [Plaintiff's] affirmative statements that he had discussed the waiver with counsel and that he agreed to it of his own free will." *Id.* The Appellate Division also rejected Plaintiff's ineffective assistance of counsel claim, finding that the record before it indicated that he had received "meaningful representation." *Id.* The Appellate Division affirmed the judgment below.[9] Plaintiff sought leave to appeal the judgment of the Appellate Division to the New York Court of Appeals several times. The New York Court of Appeals denied him leave to appeal on September 3, 2010, *People v. Hayes*, 935 N.E.2d 821 (Table)

---

[9] Plaintiff also filed an application with the Appellate Division, pursuant to Criminal Procedure Law § 460.15, for leave to appeal the April 8, 2009 judgment denying his second § 440.10 motion. That application was denied on June 19, 2009. *People v. Hayes*, No. 102577 (App. Div. June 19, 2009).

(N.Y. 2010), November 30, 2010, *People v. Hayes*, 939 N.E.2d 813 (Table) (N.Y. 2010), and

August 19, 2011, *People v. Hayes*, 954 N.E.2d 96 (Table) (N.Y. 2011).

### 3. Sullivan County Jail

#### a. Plaintiff's Complaint About Gorr

Plaintiff was incarcerated at the Sullivan County Jail from October 27, 2005 until August

31, 2007, when he was transferred to the Downstate Correctional Facility after his August 28,

2007 sentencing.  (Aff. of Col. Harold L. Smith, Jr. in Supp. of Mot. for Summ. J. ("Smith Aff.,

Indiv. Defs.") ¶ 12.)  Plaintiff claims that when he arrived at the Sullivan County Jail on October

26, 2005, he told an unidentified officer that he had been assaulted by Detective Gorr and wanted

to file a formal complaint and press an assault charge.  (Compl., *Hayes v. Gorr*, No. 09-CV-2071

("*Gorr* Compl.") ¶ 15.)  Plaintiff claims he was ignored and placed in a holding cell.  (*Id.* ¶ 16.)

According to Plaintiff, on October 27, 2005, after he began experiencing sharp pains in his chest,

broke out in a cold sweat, and had numbness in his extremities, he was taken to the Catskill

Regional Medical Center in Harris, New York.  (*Id.* ¶¶ 17-20; Pl.'s Aff. in Opp'n to Indiv. Defs.

Ex. 10, at 2 (U.S. Secret Serv. Notification of State Arrest).)  On October 28, 2005, Plaintiff was

discharged from the hospital and returned to the Sullivan County Jail.  (*Gorr* Compl. ¶ 24.)

Plaintiff claims that he spoke to several individuals at the Sullivan County Jail, including

Defendants Corporal Gardner and Colonel Smith, about filing a complaint and an assault charge

against Gorr.  (*Id.* ¶¶ 25-34, 43-47.)  Colonel Smith is the Jail Administrator of the Sullivan

County Jail and has served in that capacity since January 2005.  (Aff. of Col. Harold Smith, Jr.

("Smith Aff., Cnty. Defs.") ¶ 1.)  Corporal Gardner was assigned to the Sullivan County Jail at

the time of Plaintiff's incarceration.  (Aff. of Harry Gardner in Supp. of Mot. for Summ. J.

("Gardner Aff.") ¶¶ 1-2.)  Plaintiff alleges that on October 28, 2005, Corporal Gardner told

Plaintiff that he would notify the appropriate individuals regarding Plaintiff's complaint, and on October 29, Gardner told Plaintiff that he would follow up on the matter. (*Gorr* Compl. ¶¶ 31-34; Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 21.) Plaintiff also sent a letter to the Sullivan County District Attorney on November 6, 2005, informing him of Gorr's alleged assault of Plaintiff and stating that he wanted to file an assault charge against Gorr. (*Gorr* Compl. ¶ 35; Defs.' Resp. to R. 26 Disc. Demand 2, Ex. A (No. 07-CV-7667, Dkt. No. 33).) Plaintiff also claims that he wrote a letter to Defendant Smith in early November 2005, informing him of the "physical assault" he had "been subjected to" by Gorr, and of Plaintiff's desire to file administrative and criminal complaints against Gorr. (*Gorr* Compl. ¶ 43; Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 17.) Plaintiff claims that Smith acknowledged receiving the letter and assured Plaintiff that the matter would be handled soon. (*Gorr* Compl. ¶¶ 44-46; Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 19.) Plaintiff claims that no one ever contacted him about the charges he wished to file against Gorr. (*Gorr* Compl. ¶ 47.)[10]

### b. Sullivan County Jail Law Library

Plaintiff also raises several complaints about the law library at the Sullivan County Jail. For example, Plaintiff asserts that the law library at the Sullivan County Jail was inadequate and that Plaintiff was sometimes denied access to the law library. (*Gorr* Compl. ¶¶53-70; Pl.'s Aff. in Opp'n to Indiv. Defs. ¶¶ 16, 20, 25.) He also claims that he was denied access to federal jurisprudence, including Supreme Court authority (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 16), and

---

[10] Defendants Smith and Gardner state that as peace officers, they have no authority to investigate the actions of police officers, and complaints about matters not involving the jail or a corrections officer are not subject to the jail's grievance procedure. (Smith Aff., Indiv. Defs. ¶¶ 6-10; Gardner Aff. ¶¶ 8-11.)

that the law library consisted only of volumes of the New York Supplement, Second Series, updated through 1993, as well as a few volumes of McKinney's Consolidated Laws, (Pl.'s Aff. in Supp. of Opp'n to Mot. for Summ. J. ("Pl.'s Aff. in Opp'n to Cnty. Defs.") ¶ 10).  He also claims that he was denied access to legal reference materials housed at the Hamilton O'Dell Library at the Sullivan County Courthouse.  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 20.)

The New York State Commission of Corrections details minimum standards ("NYS Minimum Standards") with which correctional facility law libraries must comply, which are set out in Part 7031 of Title 9 of the Official Compilation of Codes, Rules and Regulations of the State of New York.  (Smith Aff., Indiv. Defs. ¶ 16; N.Y. Comp. Codes R. & Regs. Tit. 9, § 7031.)  The NYS Minimum Standards §§ 7031.4(b) and (d) detail certain reference materials which must maintained within the facility and made available to inmates.  (Smith Aff., Cnty. Defs. Ex. A.)[11]  Section 7031.4(e) lists reference materials to which inmates must have access, but pursuant to § 7031.4(f), these materials are not required to be kept within the facility.  (Id.)[12]

---

[11] These include one copy per 100 prisoners of: New York State Correction Law Annotated; New York State Penal Law Annotated; New York State Criminal Procedure Law Annotated; and Title 9 of the Official Compilation of Codes Rules and Regulations of the State of New York Subtitle AA.  See N.Y. Comp. Codes R. & Regs. Tit. 9, § 7031.4(b).  The prison law library also must maintain within the facility at least one copy, with supplements, of: a legal dictionary; form books for use in conjunction with New York State Criminal Procedural Law, New York State Civil Practice Law and Rules, 42 U.S.C. §§ 1981-1983, and 18 U.S.C. §§ 4001-4321; a treatise with respect to New York Civil Practice Law and Rules, New York State Penal Law, New York State Criminal Procedure Law, and actions commenced pursuant to 42 U.S.C. § 1983; a New York State case law digest dealing with criminal law and prisoners/prisons; the United States and New York Constitutions; a treatise on prisoners' legal rights and remedies; New York State Civil Practice Law and Rules Annotated; 42 U.S.C. §§ 1981-1988; 18 U.S.C. §§ 4001-4321; and a treatise on legal research.  See id. §7031.4(d).

[12] According to §§ 7031.4(e) and (f), the prison must also make available to prisoners: the United States Code Annotated; New York State Consolidated Laws; reported decisions of the Courts of New York from 1960 to date; reported decisions of the federal courts from 1960 to date; a Federal case law digest; a New York State case law digest; Shepard's; and Federal and

To comply with the requirements of § 7031, the Sullivan County Jail adopted a Standard Operating Procedure.  (Smith Aff., Cnty. Defs. ¶ 5, Ex. B.)  The Standard Operating Procedure provides that inmates must be provided access to current legal materials, as set forth in § 7031.4 of the NYS Minimum Standards, that no more than four inmates may occupy the law library at any given time, that inmates may request legal materials to be made available to them in their housing units, and that the administrator shall comply with reasonable requests to photocopy legal reference materials, to be borne at the facility's expense.  (*Id.*)

According to Smith, during Plaintiff's incarceration, the Sullivan County Jail law library contained all the required materials set out in the New York State Commission of Corrections NYS Minimum Standards § 7031.4.  (Smith Aff., Cnty. Defs. ¶ 6; Smith Aff., Indiv. Defs ¶ 19.) In fact, according to Smith, the New York State Commission of Corrections in Albany conducted two reviews of the Sullivan County Jail during Plaintiff's incarceration at the jail and on both occasions found the facility in full compliance with the standards set forth in § 7031 for access to legal services.  (Smith Aff., Cnty. Defs. ¶¶ 10-12, Exs. C, D.)  The first review was conducted in January 2006 and the second in November 2006.  (*Id.*)  Furthermore, Smith claims that when an inmate requests reference materials that are not required to be available at the jail facility but that must be available to inmates (pursuant to §§ 7031.4(e) and (f)), the reference materials are made available to the inmate through the Hamilton O'Dell Library at the Sullivan County Courthouse.  (*Id.* ¶¶ 7-8.)  To request this reference material, the inmate is required to submit a written request to the Sullivan County Deputy in charge of the jail law library, and the Deputy then makes copies of that material from the Sullivan County Courthouse and provides

New York State legal forms; though these materials are *not required* to be kept within the facility.  *See* N.Y. Comp. Codes R. & Regs. Tit. 9, §§ 7031.4(e), (f).

the copies to the inmate.  (*Id.* ¶ 9, Ex. A.)  Plaintiff claims, however, that this process was not followed, and that for the first twenty months that he was incarcerated at the Sullivan County Jail, he had no access to the material in the law library at the Sullivan County Courthouse. (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 20; Pl.'s Aff. in Opp'n to Cnty. Defs. ¶¶ 21-23.)

Plaintiff also asserts that he was routinely denied access to the law library, that he often had to choose between attending recreation or going to the law library, and that he submitted several grievances complaining of these problems to the jail administrators.  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶¶ 16-17, 20, 25; *Gorr* Compl. ¶¶ 53-58.)  In response to Defendants' interrogatories, Plaintiff produced several grievances which he claims he filed between September 5, 2006 and August 6, 2007, complaining of being denied access to the law library. (Aff. of Michael Davidoff, Esq. ("Davidoff Aff.") Ex. F (Pl.'s Answers to Interrogs.).) According to Smith, whenever a grievance is submitted and received by the Sullivan County Jail, it is signed by a deputy and is assigned a number.  (Smith Aff., Indiv. Defs. ¶¶ 46-47.)  The grievances which Smith claims were never received by the jail are not signed by a deputy and have no grievance number assigned.  (Smith Aff., Cnty. Defs. ¶ 32; Davidoff Aff. Ex. F (Pl.'s Answers to Interrogs.: Grievance dated Sept. 5, 2006; Grievance dated Dec. 31, 2006; Grievance dated Apr. 25, 2006; Grievance undated; Grievance dated Aug. 6, 2007; Grievance dated May 28, 2007).)  Smith claims the jail received a grievance from Plaintiff regarding his use of the law library on January 29, 2007 (Smith Aff., Cnty. Defs. ¶ 24, Ex. I), and two such grievances on August 13, 2007, which were dated August 6, 2007, (*id.* ¶¶ 26-30, Exs. J, L).  Each of these was resolved.  (*Id.* ¶¶ 23-31.)[13]

---

[13] In the January 29, 2007 grievance, Plaintiff complained of not being called to the law library after he had submitted a slip.  (Smith Aff., Cnty. Defs. Ex. I.)  The grievance coordinator

The Sullivan County Jail maintains logs of an inmate's activity, including what times the inmate spends at recreation and in the law library.  (Smith Aff., Indiv. Defs. ¶ 24.)  Smith reviewed those logs and prepared an analysis of the dates and times which Plaintiff spent at recreation and at the law library during his incarceration at the jail.  (*Id.* ¶ 26; Smith Aff., Cnty. Defs. Ex. G.)  Smith's analysis shows that during the 673 days which Plaintiff was an inmate at the Sullivan County Jail, there were 51 occasions where there was some overlap between the time Plaintiff's cell block was called for recreation and the time he was allotted to go to the law library.  (Smith Aff., Indiv. Defs. ¶ 36; Smith Aff., Cnty. Defs. Ex. G.)  However, the record also reveals that on 244 occasions, Plaintiff chose not to attend recreation where there was no scheduling conflict between Plaintiff's recreation and library time.  (Smith Aff., Cnty. Defs. Ex. G.)[14]  Furthermore, the analysis shows that Plaintiff visited the law library on 345 out of the 673

---

notes show that after he spoke with Plaintiff, Plaintiff withdrew the complaint.  (*Id.*)  In Plaintiff's deposition, he stated that he did not remember the disposition of this grievance and did not remember withdrawing the complaint.  (Exam. Before Trial of Earl Hayes ("Hayes Dep.") 131:3-25.)  On August 6, 2007, Plaintiff filed a grievance stating that the law library had been "closed the last few days," and this grievance was received by the jail on August 13, 2007.  (Smith Aff., Cnty. Defs. Ex. J.)  The Grievance Investigation Form shows that the library was only closed on August 5, 2007, and that otherwise, Plaintiff had access to the law library almost nightly.  (*Id.*)  Plaintiff signed and accepted the resolution of the grievance on August 15, 2007.  (*Id.*)  Plaintiff also filed another grievance dated August 6, 2007, and received August 13, 2007, where he complained of "being forced to choose between going to the law library and going to recreation."  (*Id.* at Ex. L.)  The Grievance Investigation Form states that on most days Plaintiff would attend recreation with his cell block, and that he would spend most evenings in the law library.  (*Id.*)  Again, Plaintiff agreed to the disposition of the grievance and signed the form on August 15, 2007.  (*Id.*)

[14] There were eight additional occasions where Plaintiff's entire cell block refused exercise and Plaintiff did not attend recreation on those dates.

days he was incarcerated and spent over 500 hours in the law library while he was an inmate at the Sullivan County Jail. (Smith Aff., Indiv. Defs. ¶ 37; Smith Aff., Cnty. Defs. Ex. G.)[15]

### c. Plaintiff's Allegation of Scalding

Plaintiff has also alleged that he was scalded by hot water in the shower at the Sullivan County Jail in early June 2006. (Am. Compl., *Hayes v. Cnty. of Sullivan*, No. 07-CV-7667 ("*Cnty. of Sullivan* Am. Compl.") 6; *Gorr* Compl. ¶¶ 48-52.) However, because Plaintiff does not address this claim in either of his affidavits in response to Defendants' motions for summary judgment, the Court deems him to have abandoned the claim. *See Ahmad v. Port Auth. of N.Y. & N.J.*, No. 09-CV-3134, 2011 WL 7080691, at *3 n.9 (E.D.N.Y. Dec. 7, 2011) (deeming pro se plaintiff's claims abandoned when he did not address those claims in his opposition to summary judgment and where there was no basis for the claims in the record), *adopted by* 2012 WL 194965 (E.D.N.Y. Jan. 23, 2012); *Smith v. N.Y.C. Dep't of Educ.*, No. 09-CV-9256, 2011 WL 5118797, at *6 n.8 (S.D.N.Y. Oct. 28, 2011) (finding that pro se plaintiff abandoned claims he did not address in his opposition to summary judgment); *Lipton v. Cnty. of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) (noting that courts "may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed").[16]

---

[15] Plaintiff also claims that he sent letters to Smith on May 4, 2006 and August 20, 2006, complaining of being denied access to the law library, the inadequacy of the law library, and having to choose between going to recreation and the library. (Hayes Dep. 96:16-97:12; Davidoff Aff. Ex. F (Pl.'s Answers to Interrogs.).) Plaintiff claims that these letters went unanswered. (Hayes Dep. 97:20-25.) Smith denies having received either of these letters, and claims that they do not exist in the Sullivan County Jail records. (Smith Aff., Cnty. Defs. ¶ 35.)

[16] Additionally, the Court notes that there is no support in the record for Plaintiff's claim. Plaintiff asserts that he was scalded in the genital region in early June 2006, and submitted two written requests for medical treatment, but was never called down to the medical unit. (*Cnty. of*

B. Procedural History

Plaintiff filed his initial complaint in *Hayes v. County of Sullivan*, No. 07-CV-7667

("*County of Sullivan*") with the Pro Se Clerk's Office on June 6, 2007, naming the County of

Sullivan and the Sullivan County Jail as defendants.  By Order of Chief Judge Kimba M. Wood,

dated August 28, 2007, Plaintiff was directed to file an amended complaint within sixty days.

(No. 07-CV-7667, Dkt. No. 3.)  Chief Judge Wood also dismissed Plaintiff's claims against the

Sullivan County Jail.  (*Id.*)  On December 19, 2007, Plaintiff filed an Amended Complaint with

the Pro Se Clerk's Office (No. 07-CV-7667, Dkt. No. 8), and on April 2, 2008, Chief Judge

Wood entered an order directing the Clerk of the Court to file Plaintiff's Amended Complaint

and effect service on the County of Sullivan, the only remaining defendant, (No. 07-CV-7667,

Dkt. No. 6).  The case was initially assigned to Judge Victor Marrero and was reassigned to this

Court on April 10, 2008.  (No. 07-CV-7667, Dkt. Nos. 7, 10.)

---

*Sullivan* Am. Compl. 6; *Gorr* Compl. ¶¶ 48-51.)  Plaintiff also alleges that he sent Colonel Smith and Lieutenant Cole several letters about the inadequate medical attention concerning the scalding, but that neither one ever replied.  (*Gorr* Compl. ¶ 52.)  On June 14, 2006, Plaintiff filed a Notice of Claim with the Sullivan County Attorney, informing her that on June 2, 2006, Plaintiff had been scalded in the shower at the Sullivan County Jail.  (Smith Aff., Cnty. Defs. Ex. R.)

The medical records of the Sullivan County Jail clearly belie Plaintiff's claim. The medical records show that Plaintiff was seen by the jail medical staff on June 3, 2006 and again on June 13, 2006.  (Smith Aff., Cnty. Defs. ¶ 37, Ex. P.)  On June 3, 2006, Plaintiff complained of athlete's foot, and on June 13, 2006 he complained of allergies.  (*Id.*)  The notes from his medical visits include no mention of being scalded on June 2, 2006.  Furthermore, Defendants highlight that Plaintiff was scalded in the shower at the Sullivan County Jail in January 2003, when he was incarcerated for a different offense.  (Smith Aff., Cnty. Defs. ¶¶ 36, 38, Ex. Q.) The medical notes from 2003 indicate that Plaintiff was seen by the jail medical staff on January 7, 2003 and January 20, 2003, and during these medical visits he claimed he had been scalded in the shower and sustained burns to his genitals.  (*Id.*)  Defendants also highlight that in Plaintiff's deposition, Plaintiff admitted that he was scalded in the shower only once at the Sullivan County Jail.  (Smith Aff., Cnty. Defs. ¶ 39; Hayes Dep. 144:8-23 ("I was never scalded before.").)  Therefore, the Court finds that there is no basis for Plaintiff's claim in the record.

24

On June 26, 2008, Defendant County of Sullivan filed a motion to dismiss.  (No. 07-CV-7667, Dkt. No. 14.)  Plaintiff filed an application to stay the motion to dismiss, which was reviewed and denied by Magistrate Judge Lisa Smith on August 12, 2008.[17]  (No. 07-CV-7667, Dkt. No. 17.)  Magistrate Judge Smith then directed Plaintiff to submit a formal application to file a Second Amended Complaint.  (No. 07-CV-7667, Dkt. No. 17.)

On October 10, 2008, Plaintiff filed a second action, *Hayes v. Gorr*, No. 09-CV-2071 ("*Gorr*"), with the Pro Se Clerk's Office.  This Court accepted *Gorr* as related to *County of Sullivan* and the case was assigned to this Court on March 6, 2009.  (No. 09-CV-2071, Dkt. No. 3.)  On March 26, 2009, the Court issued an Order consolidating *Gorr* and *County of Sullivan*, denying County Defendant's motion to dismiss *County of Sullivan* without prejudice, and denying Plaintiff's application to file a Second Amended Complaint in *County of Sullivan*.  (No. 07-CV-7677, Dkt. No. 24.)

County Defendants filed their Answers on May 13, 2009 (No. 07-CV-7667, Dkt. Nos. 25, 26), and Individual Defendants filed their Answer on June 4, 2009, (No. 07-CV-7667, Dkt. No. 27).  On July 27, 2011, County Defendants filed their Motion for Summary Judgment (No. 07-CV-7667, Dkt. No. 58), which was fully submitted on August 25, 2011, (No. 07-CV-7667, Dkt. No. 76.  Individual Defendants filed their Motion for Summary Judgment on July 29, 2011 (No. 07-CV-7667, Dkt. No. 67), which was fully submitted on October 6, 2011, (No. 07-CV-7667, Dkt. No. 82).  On July 29, 2011, Individual Defendants also filed a Motion to Dismiss Cole as a

---

[17]  On April 10, 2008, the Court referred the case to then-Magistrate Judge Mark D. Fox. (No. 07-CV-7667, Dkt. No. 11.)  Following Magistrate Fox's retirement, Magistrate Judge Smith considered Plaintiff's application.  On January 12, 2009, Magistrate Judge Paul E. Davison was assigned to the case.  (No. 07-CV-7667, Dkt. No. 22.)

Defendant (No. 07-CV-7667, Dkt. No. 65), which Plaintiff does not oppose, (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 3).[18]

## II. Discussion

### A. Standard of Review

Summary judgment may be granted where it is shown "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (same). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003); *see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court must draw all reasonable inferences in the nonmovant's favor).

A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary

---

[18] Individual Defendants seek to dismiss the *Gorr* Complaint with prejudice as to Lieutenant Cole. Lieutenant Cole passed away on May 28, 2009, and Defendants claim that neither he nor his estate was served with the Complaint. (Aff. in Supp. of Mot. to Dismiss ¶ 2.) Plaintiff does not object to the motion and joins in the application to dismiss the *Gorr* Complaint as to Lieutenant Cole with prejudice. (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 3.) Therefore, Individual Defendants' Motion to Dismiss as to Cole is granted, and Lieutenant Cole is dismissed from the *Gorr* Complaint with prejudice.

judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (internal citations omitted). "When the moving party has carried its burden under Rule 56, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."). "A fact is material when it might affect the outcome of the suit under governing law." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial. *See Westinghouse Elec. Corp. v. N.Y.C. Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990). A court's goal should be "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24.

Because Plaintiff is proceeding pro se, the Court construes Plaintiff's pleadings liberally and interprets them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, pro se litigants are held to a lesser pleading standard than other parties.").

B. Analysis

Plaintiff claims that Defendants violated his rights under the Fourth, Sixth, and Fourteenth Amendments, and seeks to hold County Defendants and the various Individual Defendants liable under 42 U.S.C. § 1983. As against Detective Gorr, Plaintiff claims that Gorr assaulted him in the Wal-Mart Parking lot, unlawfully seized and searched Plaintiff without probable cause, unlawfully directed Deputy Morgan to arrest Plaintiff, and committed perjury at

Plaintiff's suppression hearing.  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 25.)  Plaintiff claims that

Deputy Morgan held and arrested him without probable cause and committed perjury at

Plaintiff's suppression hearing.  (*Id.*)  Plaintiff claims that Detective Starner searched the files on

Plaintiff's laptop without first obtaining a search warrant, willfully made false statements in the

search warrant application which was used to obtain a warrant to search Plaintiff's home, and

committed perjury at Plaintiff's suppression hearing.  (*Id.*)[19]  Plaintiff also alleges that Judge

---

[19] In his Complaint, Plaintiff also alleged that Gorr and Starner committed perjury before the grand jury that indicted Plaintiff. (*Gorr* Compl. ¶¶ 37-38.)  Plaintiff was unable to answer with specificity in his deposition exactly what statements they made that were perjurious. (Hayes Dep. 73:13-74:12.)  Plaintiff, moreover, does not address this claim in either of his affidavits in opposition to Defendants' summary judgment motions, and thus the Court deems it abandoned. *See Ahmad v. Port Auth. of N.Y. & N.J.*, No. 09-CV-3134, 2011 WL 7080691, at *3 n.9 (E.D.N.Y. Dec. 7, 2011) (deeming pro se plaintiff's claims abandoned when he did not address those claims in his opposition to summary judgment and where there was no basis for the claims in the record), *adopted by* 2012 WL 194965 (E.D.N.Y. Jan. 23, 2012).

The Court also notes that even if Plaintiff had pursued this claim, it would fail as a matter of law.  A police officer is immune from liability for testifying falsely at pretrial proceedings "where the constitutional tort is simply giving false testimony."  *White v. Frank*, 855 F.2d 956, 961 (2d Cir. 1988); *see also Daloia v. Rose*, 849 F.2d 74, 76 (2d Cir. 1988) ("[P]olice officers who testify at adversarial pretrial proceedings are entitled to absolute immunity from liability based on that testimony.").  "Where, however, the constitutional tort is the action of the police officer in initiating a baseless prosecution, his role as a 'complaining witness' [before the grand jury] renders him liable to the victim under section 1983."  *White*, 855 F.2d at 961.  Although Gorr and Starner were complaining witnesses before the grand jury, Plaintiff is merely seeking to hold them liable for their allegedly false testimony, not for malicious prosecution.  And, having pled guilty, Plaintiff cannot, as a matter of law, substantiate a claim for malicious prosecution, as he cannot establish a critical element of that claim — that the prosecution terminated in his favor.  *See Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (noting that the termination of the criminal proceedings in the plaintiff's favor is an element of a malicious prosecution claim); *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996) (noting that "under New York law . . . the favorable termination of judicial proceedings is an element of a claim for malicious prosecution").  Therefore, as the "constitutional tort is simply giving false testimony," *White*, 855 F.2d at 961, Plaintiff cannot maintain a cause of action against Gorr or Starner for allegedly committing perjury before the grand jury.  *See Anilao v. Spota*, 774 F. Supp. 2d 457, 506-07 (E.D.N.Y. 2011) (noting that "defendants are correct that, standing alone, an allegation that . . . defendants gave perjured testimony [before the grand jury] would not be sufficient to render [them] liable under § 1983" unless they were complaining witnesses "within the meaning of malicious prosecution law"); *Cipolla v. Cnty. of Rensselaer*, 129 F. Supp. 2d 436,

Ledina, the prosecutor, Mr. James R. Farrell, and Plaintiff's former attorney, Mr. Deveraux

Cannick, were involved in a conspiracy with Individual Defendants Gorr, Starner, and Morgan to

doctor evidence, suborn perjury, and deprive Plaintiff of his constitutional rights.  (Pl.'s Aff. in

Opp'n to Indiv. Defs. ¶¶ 6-9.)  Plaintiff claims that his rights were violated by Colonel Smith and

Corporal Gardner because they allegedly failed to take action when Plaintiff informed them that

he wished to file a complaint against Detective Gorr.  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 25.)

As against Smith, Plaintiff also claims that he manifested a deliberate indifference to the many

complaints which Plaintiff brought to his attention, including Plaintiff's complaints regarding the

condition of and his access to the Sullivan County Jail law library, and that he violated Plaintiff's

right of access to the courts by failing to implement a policy to ensure that Plaintiff had access to

legal material.  (*Id.*)  Plaintiff seeks to hold County Defendants liable for the actions of

Individual Defendants.

       1. Individual Defendants

            a. Claims against Gorr, Morgan and Starner Arising from Plaintiff's Arrest
            and Suppression Hearing

                   i. Perjury Claims

    Plaintiff claims that Gorr lied at Plaintiff's suppression hearing when he testified that he

watched the Wal-Mart surveillance videos prior to Plaintiff's arrest (Letter from Earl Hayes

("Hayes") to Michael Davidoff, Esq. ("Davidoff") and Samuel S. Yasgur, Esq. ("Yasgur"),

unnumbered page 2 (Aug. 12, 2010)), and that he lied as to the contents of the videos, namely

---

447 n.16 (N.D.N.Y. 2001) ("[A]bsolute immunity is available only where the constitutional tort
is simply giving false testimony . . . ." (alterations in original) (internal quotation marks
omitted)).

that the first video showed an individual with a dark jacket with a white stripe exiting the vehicle that Plaintiff was allegedly driving, and that the videos were date and time stamped, (Examination Before Trial of Earl Hayes ("Hayes Dep.") 19:4-19, 22:18-23:18).  Plaintiff further claims that Gorr lied about the entire encounter with Plaintiff in the Wal-Mart parking lot.  (Pl's Aff. in Opp'n to Indiv. Defs. ¶ 10.)   Plaintiff claims that Starner committed perjury at Plaintiff's suppression hearing "to conceal the misconduct" of his fellow officers (*Gorr* Compl. ¶ 92; Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 25), and that Morgan also committed perjury during the suppression hearing, (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 25).

Plaintiff's claims against Gorr, Morgan, and Starner for allegedly committing perjury at Plaintiff's suppression hearing are barred as a matter of law by the Second Circuit's decision in *Daloia v. Rose*, 849 F.2d 74 (2d Cir. 1988), where the Second Circuit held that "police officers who testify at adversarial pretrial proceedings are entitled to absolute immunity from liability based on that testimony."  *Id.* at 76; *see also Khorrami v. Rolince*, 539 F.3d 782, 789 (7th Cir. 2008) (holding that law enforcement officials who testify at pretrial proceedings are entitled to absolute immunity); *Holt v. Castaneda*, 832 F.2d 123, 125 (9th Cir. 1987) (same); *cf. Briscoe v. LaHue*, 460 U.S. 325, 328 n.5, 345 (1983) (holding that police officers who commit perjury during criminal trials are entitled to absolute immunity, but not reaching the question of immunity at pre-trial proceedings).  Suppression hearings are adversarial pretrial proceedings, *Daloia*, 849 F.2d at 75, and thus Gorr and Starner are absolutely immune from any liability based on the testimony they provided at Plaintiff's suppression hearing.

Therefore, Summary Judgment is granted to Defendants Gorr, Morgan and Starner for Plaintiff's claims of perjury.[20]

## ii. Conspiracy Claims

Plaintiff claims that Gorr, Morgan, and Starner were involved in a conspiracy, along with Judge Ledina, Mr. Farrell, and Mr. Cannick, to deprive Plaintiff of his constitutional rights and to obtain a conviction.  (Letter from Hayes to Davidoff and Yasgur, unnumbered page 3 (Aug. 12, 2010); Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 8.)  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).  Plaintiff has not demonstrated any facts in the record which could plausibly make out the

---

[20] Plaintiff also claims that Gorr "deliberately and recklessly made false averments" when he swore out Plaintiff's felony complaint.  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 14.)  When he swore out Plaintiff's felony complaint, Gorr stated that Plaintiff had attempted to use a Chase credit card to purchase the cell phone at the Wal-Mart, which showed up in the register as belonging to Joblanski T. Samuels.  (*Id.* at Ex. 3 (Felony Complaint).)  Plaintiff claims that at the suppression hearing, Gorr testified that Plaintiff had shown him a Pay Pal credit card, and thus this establishes that Gorr was lying on one of the occasions.  (Letter from Hayes to Davidoff and Yasgur, unnumbered page 2 (Aug. 12, 2010).)  However, Plaintiff ignores the fact that Gorr also testified at the suppression hearing that the Pay Pal card which Plaintiff allegedly showed him did not match the number which was "trapped" by the Wal-Mart register after Plaintiff allegedly attempted to use the card to purchase the cell phone.  (Suppression Hr'g Tr. 39:10-24, 43:20-25, Dec. 21, 2006.)  Therefore, the record clearly establishes that the Pay Pal card which Plaintiff allegedly showed to Gorr was not the same card that he attempted to use inside the Wal-Mart.  Plaintiff therefore has not even raised a triable issue of fact surrounding Gorr's allegedly false statement, as his claim is conclusory and conclusively contradicted by the evidence in the record.  *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (noting that the non-moving party "may not rely on conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment); *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful.").

elements of a conspiracy between Gorr, Morgan, Starner, Judge Ledina, Mr. Farrell, and Mr. Cannick.

Plaintiff claims that there was a conspiracy because "the evidence clearly establishes that they were all on the same page" as far as falsifying the evidence against Plaintiff and accepting the officers' allegedly perjured testimony. (Letter from Hayes to Davidoff and Yasgur, unnumbered page 3 (Aug. 12, 2010).) Specifically, Plaintiff claims that "[t]hey [Judge Ledina, Mr. Cannick, and Mr. Farrell] ignored the perjured testimony, and the implication being that there was a conspiracy." (Hayes Dep. 37:19-21.) In short, this amorphous and circular assertion proves nothing and, indeed, assumes the testifying officers committed perjury at all, something Plaintiff has failed to prove and something which Judge Ledina found to not have happened.[21]

---

[21] Contrary to Plaintiff's claims, there is *no support* in the record from which a reasonable factfinder could find that the officers committed perjury at his suppression hearing, the claim upon which plaintiff relies to show the existence of a conspiracy. Plaintiff's main contention is that Gorr lied when describing what the Wal-Mart surveillance videos depict. The Court first notes that although Plaintiff claims that he was unable to see the videos as they were being played at his suppression hearing (Hayes Dep. 19:6-15), the transcript demonstrates that Judge Ledina and Mr. Cannick moved Plaintiff to the jury box so that he could see the videos, (Suppression Hr'g Tr. 83:8-14, Dec. 21, 2006). Tellingly, the transcript reflects no comment from Plaintiff or Mr. Cannick that Plaintiff could not see the videos from this position.

Next, Plaintiff claims that Gorr lied when he testified at the suppression hearing that the surveillance videos were date and time stamped. (Hayes Dep. 23:13-15, 92:2-5.) The Court has reviewed the three surveillance videos which were produced by Wal-Mart and shown during Plaintiff's suppression hearing and notes that they in fact *are* date and time stamped. The three video clips, taken from three different security cameras, are date stamped October 26, 2005. The first video clip begins at 1:20:53 p.m. and ends at 1:21:59 p.m.; the second clip begins at 1:21:57 p.m. and ends at 1:22:59 p.m.; and the third clip begins at 1:22:09 p.m. and ends at 1:23:19 p.m. Therefore, Plaintiff's contention is completely without merit.

Finally, Plaintiff claims that Gorr lied about the substance of the videos, namely that he lied when he stated that the first of the three video clips shows an individual exiting the car which Plaintiff allegedly drove to the Wal-Mart, and that the individual is wearing a dark jacket with a white stripe on the sleeve. (Hayes Dep. 22:22-23:9; *see also* Suppression Hr'g Tr. 87:14-88:25, Dec. 21, 2006.) Plaintiff contends that the garment on the individual in this video clip is completely indiscernible, and thus, everyone (including Judge Ledina) watching the clips stood by as Gorr supposedly lied about what was depicted on the first video clip. (Pl.'s Aff. in Opp'n

And, that Judge Ledina reached this conclusion does not prove a conspiracy.  Thus, Plaintiff has

done no more than make "conclusory, vague [and] general" allegations, as there is no evidence

to support Plaintiff's claim that Gorr, Starner, Morgan, Cannick, Farrell, and Judge Ledina were

involved in a conspiracy to violate his rights.  *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir.

2011) (holding that plaintiff's allegations of conspiracy were "baseless" where plaintiff

"offer[ed] not a single fact to corroborate her allegation of a 'meeting of the minds' among the

coconspirators"); *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002)

("[C]omplaints containing only conclusory, vague, or general allegations that the defendants

have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly

dismissed . . . ." (internal quotation marks omitted)).

### iii. Unlawful Search and False Arrest Claims

Plaintiff's claims that Gorr and Morgan searched and arrested him unlawfully are barred

by collateral estoppel, and Plaintiff's claim that Starner illegally searched Plaintiff's computer

and made a false statement in his search warrant application is barred by res judicata.

The doctrine of collateral estoppel provides that "when an issue of ultimate fact has once

been determined by a valid and final judgment, the issue cannot again be litigated between the

same parties in any future lawsuit."  *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168

(E.D.N.Y. 2010) (internal quotation marks omitted), *aff'd*, 446 F. App'x 360 (2d Cir. 2011); *see

also Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010) ("Collateral estoppel precludes a party

from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or

---

to Indiv. Defs. ¶¶ 7-8.)  The Court notes that although the garment on the individual in the first
clip only is difficult to discern, the sequence of video clips, culminating with an individual
identified as Plaintiff walking into Wal-Mart, unfolds exactly as Gorr described.

proceeding and decided against that party." (internal quotation marks omitted)).  "Collateral

estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants

from the burden of relitigating an identical issue with the same party or his privy and of

promoting judicial economy by preventing needless litigation."  *Parklane Hosiery Co. v. Shore*,

439 U.S. 322, 326 (1979).  State court judgments must be given the same preclusive effect in

federal court as they would be given in courts of the state itself, and therefore the doctrine of

collateral estoppel may "bar a plaintiff from bringing an action in federal court pursuant to []

§ 1983, if the plaintiff would be precluded from litigating his claim in a New York State court."

*Allison v. Farrell*, No. 97-CV-2247, 2002 WL 88380, at *3 (S.D.N.Y. Jan. 22, 2002); *see also*

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996) ("The Full Faith and Credit Act

mandates that the 'judicial proceedings' of any State 'shall have the same full faith and credit in

every court within the United States . . . as they have by law or usage in the courts of such State

. . . from which they are taken.'  The Act thus directs all courts to treat a state court judgment

with the same respect that it would receive in the courts of the rendering state." (citing 28 U.S.C.

§ 1738)).[22]

---

[22] Individual Defendants argue that the Court should apply the *Rooker-Feldman* doctrine to bar Plaintiff's claims against Gorr, Starner, and Morgan that were litigated in state court. (Mem. of Law in Supp. of Mot. for Summ. J. by the Indiv. Defs. 6-7.)  However, the Court finds *Rooker-Feldman* inapplicable and instead applies ordinary preclusion principles.  In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court narrowed the scope of *Rooker-Feldman* in response to lower court decisions construing the doctrine "far beyond the contours of the *Rooker* and *Feldman* cases . . . [and] superseding the ordinary application of preclusion law . . . ." *Id.* at 283.  The Supreme Court held that the doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284.  Subsequently, the Second Circuit in *Hoblock v. Albany County Board of Elections*, 422 F.3d 77 (2d Cir. 2005), delineated four requirements for the application of the *Rooker-Feldman* doctrine: (1) the federal-court plaintiff must have lost in state court; (2) the plaintiff must complain of injuries caused by a state court

In *Allen v. McCurry*, 449 U.S. 90 (1980), the Supreme Court held that federal courts should apply preclusion principles to § 1983 actions seeking to vindicate constitutional rights that were previously decided in state court criminal proceedings.  *See id.* at 104.  As the Supreme Court noted, "nothing in the legislative history of § 1983 reveals any purpose to afford less deference to judgments in state criminal proceedings than to those in state civil proceedings." *Id.*  Thus, according to the Supreme Court, there is "no reason to believe that Congress intended to provide a person claiming a federal right an unrestricted opportunity to relitigate an issue already decided in state court simply because the issue arose in a state proceeding in which he would rather not have been engaged at all." *Id.*  The inquiry is governed by state law, and "[u]nder New York law, collateral estoppel will preclude a federal court from deciding an issue

---

judgment; (3) the plaintiff must invite district court review and rejection of that judgment; and (4) the state-court judgment must have been rendered before the district court proceedings commenced.  *Id.* at 85 (citing *Exxon Mobil*, 544 U.S. at 284).

The injuries of which Plaintiff complains are the alleged violations of his constitutional rights by Gorr, Starner, and Morgan.  Because these injuries existed before the state court judgment against him was rendered, and were thus not "caused by" any state court judgment, *Rooker-Feldman* is inapplicable.  *See McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007) ("[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed *prior* in time to the state-court proceedings, and so could not have been 'caused by' those proceedings." (emphasis in original)); *see also Skinner v. Switzer*, 131 S. Ct. 1289, 1297-98 (2011) (holding that *Rooker-Feldman* did not bar prisoner's § 1983 claim challenging constitutionality of state post-conviction DNA testing procedures because he was not challenging an adverse state decision); *Kimbrough v. Town of Dewitt Police Dep't*, No. 08-CV-03, 2010 WL 3724017, at *4 (N.D.N.Y. Sept. 15, 2010) (noting that *Rooker-Feldman* did not bar § 1983 excessive force claim).  To the extent that Plaintiff's claims require the Court to examine issues already decided by the state court, ordinary preclusion principles apply.  *See Exxon Mobil*, 544 U.S. at 293 (noting that the *Rooker-Feldman* doctrine does not "stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court," because "[i]f a federal plaintiff present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . . then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion" (second alteration in original) (internal quotation marks omitted)).

if (1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen v. Brown*, 481 F.3d 89, 105 (2d Cir. 2007) (internal quotation marks omitted); *see also Swiatkowski*, 745 F. Supp. 2d at 168 (same).[23]

Here, Plaintiff challenged the probable cause for his arrest and the search of his person during his criminal proceedings in Sullivan County Court.  Judge Ledina held a two-day suppression hearing, where Plaintiff was represented by counsel who had a full and fair opportunity to cross examine Gorr, Starner, and Morgan.  Furthermore, after the suppression hearing, Plaintiff's counsel submitted an affirmation in support of Plaintiff's suppression motion making the *same exact* arguments that Plaintiff makes before this court — namely that Gorr and Morgan lacked probable cause to arrest Plaintiff, that the search of Plaintiff was conducted without probable cause, and that the testimony of Gorr, Starner, and Morgan at the suppression hearing was inconsistent and not credible.  (Affirmation in Supp. of Suppression Mot., unnumbered pages 1-3 (Jan. 31, 2007).)  Judge Ledina denied Plaintiff's motion to suppress in a written order, holding that Gorr and Morgan had probable cause to arrest and search him. *Suppression Order* 2.

---

[23] Some courts in the Second Circuit enumerate a four-part test for collateral estoppel. *See, e.g.*, *Reyes v. City of New York*, No. 10-CV-1838, 2012 WL 37544, at *4 (E.D.N.Y. Jan. 9, 2012) ("'Collateral estoppel applies when: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" (quoting *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006))); *Allison v. Farrell*, No. 97-CV-2247, 2002 WL 88380, at *3 (S.D.N.Y. Jan. 22, 2002) (same).  The result here is the same under either test.

Plaintiff subsequently pleaded guilty and pursuant to his guilty plea waived his right to appeal as well as his right "to challenge the conduct of police officers in connection with obtaining evidence," and acknowledged that he would "be foreclosed forever from complaining of any errors that might have occurred from the date of the crime involved right through the time of sentencing."  (Plea Tr. 11:12-13:1, Mar. 2, 2007.)  Even though Plaintiff waived his right to appeal, an appeal of his guilty plea was heard by the Appellate Division, which affirmed that Plaintiff received meaningful representation in connection with his guilty plea, and that his waiver of the right to appeal was entered into knowingly and voluntarily.  *See People v. Hayes*, 896 N.Y.S.2d 225, 227 (App. Div. 2010).[24]

"Settled authority establishes that where, as here, a state court has determined that the . . . warrantless [search or] seizure was supported by probable cause, the defendant may not relitigate that determination in a federal Section 1983 action."  *DeFranco v. Town of Irondequoit*, No. 06-CV-6442, 2009 WL 2957813, at *4 (W.D.N.Y. Sept. 11, 2009) (holding that plaintiffs who pled guilty after their motion to suppress evidence was denied were barred by collateral estoppel from re-litigating their Fourth Amendment claims under § 1983); *see also Allen*, 449 U.S. at 103-05 (holding that collateral estoppel applied to § 1983 claims and remanding case for a determination of whether state collateral estoppel law barred plaintiff from proceeding on § 1983 claim for unlawful search and seizure when he had lost suppression hearing in state court); *Reyes v. City of New York*, No. 10-CV-1838, 2012 WL 37544, at *4 (E.D.N.Y. Jan. 9, 2012) (applying collateral

---

[24] Plaintiff also re-raised these *same arguments* regarding probable cause for his arrest and search before Judge Ledina several times — in his April 2, 2007 motion to vacate his guilty plea; in his October 16, 2007 § 440.10 motion to vacate his conviction; in his January 9, 2008 motion asking for the County Court's recusal and seeking reconsideration of the denial of his § 440.10 motion; and finally in his December 5, 2008 § 440.10 motion.  Judge Ledina considered each of Plaintiff's motions and denied every one.

estoppel to dismiss § 1983 action where "plaintiff previously challenged his arrest in a pre-trial

motion in state court, arguing the police lacked probable cause to arrest"); *Mitchell v. Hartnett*,

262 F. Supp. 2d 153, 155 (S.D.N.Y. 2003) (holding that plaintiff who unsuccessfully challenged

the lawfulness of his arrest at suppression hearing was barred by collateral estoppel from raising

the same argument in a § 1983 action); *Perlleshi v. Cnty. of Westchester*, No. 98-CV-6927, 2000

WL 554294, at *4 (S.D.N.Y. Apr. 24, 2000) ("[W]here a claimant has had a full and fair

opportunity to litigate a Fourth Amendment issue in state court, the federal court should award

the state court's findings preclusive effect in accordance with that state's preclusion doctrine.");

*Brown v. De Fillipis*, 717 F. Supp. 172, 178-79 (S.D.N.Y. 1989) (holding that collateral estoppel

barred plaintiff's § 1983 claim where plaintiff challenged his arrest in a suppression hearing,

pled guilty before trial, and guilty plea was affirmed without opinion by the Appellate

Division).[25]

Plaintiff claims that he was not afforded a full and fair opportunity to litigate his claims

in state court "because the Court manifested a bias for the [s]tate against [Plaintiff], as

demonstrated by its failure to act upon Detective Gorr's palpably false suppression hearing

---

[25] The Second Circuit has held that where a defendant has a suppression hearing determined adversely to him, but then is acquitted at trial, that defendant has not had a "full and fair opportunity" to challenge the suppression hearing, because "appellate review of a suppression determination in a prior proceeding was foreclosed by an acquittal," and the defendant is thus not bound by collateral estoppel in a § 1983 action. *Johnson v. Watkins*, 101 F.3d 792, 795-96 (2d Cir. 1996); *see also Taylor v. City of New York*, No. 03-CV-6477, 2006 WL 1699606, at *8 (S.D.N.Y. June 21, 2006) (same).  However, this line of cases is inapplicable here, as Plaintiff foreclosed the opportunity to challenge the suppression ruling because of his own guilty plea, not because of an acquittal.  *See Grullon v. Reid*, No. 97-CV-7616, 1999 WL 436457, at *6 (S.D.N.Y. June 24, 1999) (holding that plaintiff's Fourth Amendment claims were collaterally estopped by the denial of the same claims at his suppression hearing and reasoning that he "cannot avoid the estoppel effect of the suppression hearing by alleging that the criminal action arising out of the . . . investigation was not fully litigated" because of "his guilty plea").

testimony . . . ."  (Letter from Hayes to the Court, unnumbered page 1 (Oct. 11, 2011) (No. 07-CV-7667, Dkt. No. 85); Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 9.)  However, as discussed above, Plaintiff's claims of conspiracy and bias are unsupported by any evidence in the record and are utterly without merit.  Moreover, despite waiving his right to appeal and challenge the conduct of the officers on the day of his arrest, Plaintiff filed a motion to withdraw his guilty plea, three § 440.10 motions to vacate his conviction, has had an appeal heard by the Appellate Division, and has submitted three applications to the New York Court of Appeals seeking leave to appeal.  No decision of any state court has raised even the slightest doubt about the integrity of the lower court proceedings in Plaintiff's criminal case.  That does not demonstrate bias against Plaintiff; rather, it establishes that Plaintiff's assertions are baseless.  Therefore, Plaintiff's claims that he was searched and arrested without probable cause are precluded by collateral estoppel.

In addition to being barred by collateral estoppel, Plaintiff's claim that he was arrested without probable cause is also precluded as a matter of law by his guilty plea.  The Court construes plaintiff's claim that he was arrested without probable cause as a claim for false arrest. "A § 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law."  *Covington v. City of New York*, 171 F.3d 117, 122 (2d Cir. 1999) (internal quotation marks omitted).  Under New York law, a plaintiff claiming false arrest must show "that the defendant intentionally confined him without his consent and without justification."  *Id.*; *see also Toliver v. City of New York*, No. 10-CV-3165, 2011 WL 4964665, at *3 (S.D.N.Y. Oct. 18, 2011) ("To state a claim for false arrest under Section 1983, a plaintiff must allege: (1) he was intentionally confined, (2) he was conscious of the confinement, (3) he did not consent to the confinement, and (4) the confinement was not

privileged." (citing *Shain v. Ellison*, 273 F.3d 56, 67 (2d Cir. 2001))).  However, probable cause

for the arrest is a complete defense to a claim of false arrest, whether the claim is brought under

§ 1983 or New York law.  *See Covington*, 171 F.3d at 122; *see also Frigerio v. United States*,

No. 10-CV-9086, 2011 WL 3163330, at *8 (S.D.N.Y. July 22, 2011) ("[T]he existence of

probable cause is an absolute defense to a false arrest claim." (citing *Jaegly v. Couch*, 439 F.3d

149, 152 (2d Cir. 2006))); *Feurtado v. Gillespie*, No. 04-CV-3405, 2005 WL 3088327, at *4

(E.D.N.Y. Nov. 17, 2005) ("A showing of probable cause . . . will defeat a false arrest claim as a

matter of law as '[t]here can be no federal civil rights claim for false arrest where the arresting

officer had probable cause.'" (quoting *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 118-19 (2d

Cir. 1995))).

      "When a Section 1983 plaintiff . . . pleads guilty to the underlying or a lesser charge,

th[is] fact[] *alone* provide[s] sufficient evidence that probable cause existed at the time of the

arrest and preclude[s] a false arrest claim under Section 1983."  *Feurtado*, 2005 WL 3088327, at

*4 (emphasis in original) (citations omitted); *see also McLaurin v. New Rochelle Police Officers*,

439 F. App'x 38, 39 (2d Cir. 2011) ("An independent review of the record confirms that the

district court properly granted summary judgment . . . with respect to the § 1983 false arrest

claims, on the ground that Appellant's conviction established probable cause for the arrest as a

matter of law." (citing *Cameron v. Fogarty*, 806 F.2d 380, 388-89 (2d Cir. 1986))); *Wang v.*

*Vahldieck*, No. 09-CV-3783, 2012 WL 92423, at *4 (E.D.N.Y. Jan. 9, 2012) ("A 'plaintiff can

under no circumstances recover [on a claim for false arrest] if he was convicted of the offense

for which he was arrested.'" (quoting *Cameron*, 806 F.2d at 388)); *Green v. Gonzalez*, No. 09-

CV-2636, 2010 WL 5094324, at *2 (S.D.N.Y. Nov. 22, 2010) ("[A] plaintiff can under no

circumstances recover [on a claim for false arrest] if he was convicted of the offense for which

he was arrested.  This is true regardless of whether a plaintiff is convicted at trial or upon entry of a guilty plea." (internal quotation marks omitted)), *adopted by* 2011 WL 1118711 (S.D.N.Y. Mar. 24, 2011).  Therefore, as Plaintiff pleaded guilty to the criminal charges which arose from his arrest on October 26, 2005, he is barred as a matter of law from bringing a claim for false arrest under § 1983.

Plaintiff also is precluded from challenging Detective Starner's actions in procuring the search warrant for Plaintiff's apartment.[26]  At no point during Plaintiff's suppression hearing did he challenge the probable cause for the issuance of the search warrant or whether the laptop was in Tomlinson's car when it was searched.  In his ruling on Plaintiff's suppression motion, Judge Ledina noted "[t]he defendant's omnibus motion did not raise the issue of the validity of the search warrant," but to the extent that the issue was raised in Starner's testimony, the Court "reaffirms its findings" that the "warrant was duly executed and the evidence seized thereunder is admissible."  *Suppression Order* 9.

Under the doctrine of res judicata, "[p]rovided the parties have had a full and fair opportunity to litigate the matter, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008) (internal quotation marks

_____

[26] Plaintiff claims that Starner illegally searched Plaintiff's computer without a search warrant, and that he lied in the search warrant application when he stated that the computer was found pursuant to the search of Tomlinson's car — Plaintiff claims that the computer was actually in his home in Dutchess County.  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 25; Hayes Dep. 78:11-19, 81:9-82:2.)  Plaintiff also claims that Starner lied in the search warrant application when he stated that "he [Gorr] stopped [Plaintiff] operating a motor vehicle."  (Pl.'s Aff. in Opp'n to Indiv. Defs. Ex. 9 (Appl. for Search Warrant); Hayes Dep. 79:7-13.)  Starner testified at the suppression hearing that he accidentally left out the word "for," and that the sentence should have read "[h]e [Gorr] stopped Hayes *for* operating a motor vehicle."  (Suppression Hr'g Tr. 122:25-126:3, Dec. 21, 2006 (emphasis added).)

omitted); *cf. Allen*, 449 U.S. at 96, 99 (reasoning that the rules of res judicata are generally applicable to § 1983 actions).  New York applies a transactional approach to res judicata, which "bar[s] a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Munsch v. Evans*, No. 11-CV-2271, 2012 WL 528135, at *8 (E.D.N.Y. Feb. 17, 2012) (alteration in original) (internal quotation marks omitted).  This prevents a party from "remain[ing] silent in the first action and then bring[ing] a second one on the basis of a preexisting claim for relief." *Id.* (internal quotation marks omitted); *accord Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002) ("[F]or purposes of a section 1983 action, the rule of res judicata applies to those issues actually litigated *as well as those that could have been but were not litigated in the state court proceedings*." (emphasis in original)).

As discussed above, Plaintiff had a full and fair opportunity to litigate his claims before Judge Ledina regarding any evidence that he thought should be suppressed based on a violation of his Fourth Amendment rights.  Plaintiff chose not to challenge the issuance of the search warrant, or to challenge the allegedly illegal search of his laptop by Starner.  Plaintiff cannot now concoct claims after the fact to get a chance at a second bite at the apple.  *See Sprecher v. Foti*, No. 92-CV-6429, 1993 WL 561132, at *2 (S.D.N.Y. Dec. 23, 1993) (holding that previous suppression hearing barred § 1983 unlawful search claim on collateral estoppel grounds, and "any attempt to perpetuate [the] claim with an assertion that hitherto undiscussed documents were taken . . . fails on res judicata grounds"); *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk*, 811 F. Supp. 808, 816 (E.D.N.Y. 1992) (holding that civil RICO defendant was barred by res judicata from challenging admissibility of evidence that he did not challenge in state court suppression hearing); *see also Brown v. Welsh*, No. 09-CV-316, 2009 WL 5031328,

at *2 (N.D. Ind. Dec. 15, 2009) (holding that because § 1983 plaintiff challenged his *Terry* stop and custodial interrogation in a suppression motion which was denied, his claim of illegal search was barred by res judicata).[27]

Therefore, the Court grants summary judgment for Individual Defendants Gorr, Starner, and Morgan for Plaintiff's claims that his arrest and subsequent searches violated his Fourth Amendment rights.

### iv. Excessive Force Claim Against Gorr

Plaintiff maintains that shortly after Gorr stopped him in the Wal-Mart parking lot, Gorr grabbed Plaintiff, spun him around, hit him in the chest, and refused to let Plaintiff leave.  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 12; Hayes Dep. 51:6-10.)  Plaintiff claims that as a result of this blow, he later experienced sharp pains in his chest and on October 27, 2005, he was transported from the Sullivan County Jail to the Catskill Regional Medical Center in Harris, New York. (*Gorr* Compl. ¶¶ 17-20; Pl's Aff. in Opp'n to Indiv. Defs. Ex. 10, at 2 (U.S. Secret Serv. Notification of State Arrest).)  Gorr denies hitting Plaintiff (Gorr Aff. ¶ 9), and, in fact, claims that he never touched Plaintiff other than when he later arrested Plaintiff, (Suppression Hr'g Tr. 61:12-18, Dec. 21, 2006).  Gorr also contends that even if Plaintiff's version is to be credited, it at the most is a matter cognizable in a state tort law suit, and does not confer original jurisdiction on the Court.  (Mem. of Law in Supp. of Mot. for Summ. J. by the Indiv. Defs. ("Indiv. Defs.' Mem.") 12.)  However, the Court construes Plaintiff's claim against Gorr as a claim for excessive force, since Gorr's alleged actions occurred in the context of the investigation of Plaintiff's activities at the Wal-Mart which culminated in his arrest.

---

[27] And, as noted, Judge Ledina ruled that there was nothing unlawful about the issuance and execution of the search warrant for Plaintiff's residence.

While Plaintiff's guilty plea bars his false arrest claim, "a guilty plea does not necessarily preclude a claim that the police used excessive force in effectuating an arrest." *Coleman v. City of Niagara Falls*, No. 09-CV-157, 2010 WL 2869529, at *2 n.4 (W.D.N.Y. July 20, 2010); *see also Griffin v. Crippen*, 193 F.3d 89, 91-92 (2d Cir. 1999) (holding that "dismissal of the excessive force claim was inappropriate," even though plaintiff pleaded guilty to assaulting prison guards); *Folino v. Town of Niagara*, No. 07-CV-407, 2008 WL 4425556, at *4-6 (W.D.N.Y. Sept. 29, 2008) (denying summary judgment on plaintiffs' excessive force claim even though plaintiffs had pled guilty to disorderly conduct and state court had determined that there was probable cause for their arrest); *Perlleshi*, 2000 WL 554294, at *4 ("A claim of excessive force charged under Section 1983 is not barred by a subsequent guilty plea or conviction of the charge for which the plaintiff was arrested."). Even a waiver of the right to appeal a guilty plea does not bar a plaintiff from bringing an excessive force claim under § 1983. *See McMillan v. City of New York*, No. 10-CV-2296, 2011 WL 6129627, at *8-9 (S.D.N.Y. Dec. 9, 2011) (holding that despite plaintiff's guilty plea and waiver of right to appeal, "her [excessive force] claim is . . . not completely barred, because [she] offers some evidence that the Officer Defendants used force in effecting her arrest"). Therefore, unlike Plaintiff's other Fourth Amendment claims, his claim of excessive force is not barred by collateral estoppel or res judicata.

An excessive force claim arising from an arrest, an investigatory stop, or other seizure of one's person is properly analyzed under the Fourth Amendment's "reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *see also Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) ("The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals."). "The relevant question is 'whether

the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Remy v. Beneri*, No. 09-CV-4444, 2011 WL 5546237, at *4 (E.D.N.Y. Nov. 9, 2011) (quoting *Graham*, 490 U.S. at 396). The Supreme Court has noted, however, that "[n]ot every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment," and a court's determination of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Furthermore, determining reasonableness "requires consideration of the specific facts in each case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he [was] actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000); *see also Chevalier v. City of New York*, No. 11-CV-1511, 2011 WL 4831197, at *3 (S.D.N.Y. Oct. 12, 2011) (same).

Here, Plaintiff has introduced evidence, namely, his own testimony, that Gorr punched him in the chest, without provocation, in the Wal-Mart parking lot at the beginning of their encounter on October 26, 2005. Indeed, Plaintiff has maintained since his arrest that Gorr hit him shortly after asking for Plaintiff's identification, as demonstrated by the letter Plaintiff sent to the Sullivan County District Attorney in 2005. (Defs.' Resp. to R. 26 Disc. Demand 2, Ex. A.) The record also supports Plaintiff's contention that he was transported to and hospitalized at the Catskill Regional Medical Center due to complaints of chest pains on October 27, 2005. (Pl.'s Aff. in Opp'n to Indiv. Defs. Ex. 10, at 2 (U.S. Secret Serv. Notification of State Arrest).) And, according to Plaintiff, Gorr was neither attempting to arrest Plaintiff nor forcibly effectuate a search of Plaintiff when Gorr allegedly hit him. This factor cuts against a finding that the

45

alleged use of force was a reasonable response to the circumstances.  *See Sullivan*, 225 F.3d at

166 ("The force used by the officer must be reasonably related to the nature of the resistance and

the force used, threatened, or reasonably perceived to be threatened, against the officer.");

*Sloane v. Westchester Cnty. Police Dep't*, No. 06-CV-5372, 2010 WL 1914857, at *4 (S.D.N.Y.

May 12, 2010) (denying summary judgment where no evidence was presented that the force

used by "any officer in placing [p]laintiff under arrest was caused by his resisting arrest, or that

such actions were caused by knowledge that [p]laintiff had a propensity for violence"); *Diaz v.

City of New York*, No. 00-CV-2944, 2006 WL 3833164, at *6 (E.D.N.Y. Dec. 29, 2006)

("Officers may not . . . gratuitously inflict pain in a manner that is not a reasonable response to

the circumstances." (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 124 (2d Cir.

2004)).  Of course, Gorr denies these allegations, but it is not for the Court to resolve this fact-

driven dispute.

 Taking Plaintiff's allegations as true, the Court cannot say, as a matter of law, that the

force Gorr allegedly used was *de minimis* and therefore not actionable.  *See Griffin*, 193 F.3d at

92 (noting that "*de minimis* uses of force generally do not suffice to state a constitutional

claim"); *Murray v. Williams*, No. 05-CV-9438, 2007 WL 430419, at *7 (S.D.N.Y. Feb. 8, 2007)

(same).  Here, the force of which Plaintiff complains — being hit in the chest without

provocation and not as part of an effort to arrest him — is not *de minimis*, as other courts in the

Second Circuit have allowed claims for excessive force to proceed under similar circumstances.

*See, e.g.*, *Tribie v. Parwanta*, No. 10-CV-6016, 2012 WL 246619, at *7 (S.D.N.Y. Jan. 26, 2012)

(denying summary judgment, but describing case as "close call," where Plaintiff alleged that

officer, without provocation, kicked him and shoved him against a wall during his arrest); *Hodge

v. Vill. of Southampton*, No. 09-CV-2606, 2012 WL 174838, at *7-8 (E.D.N.Y. Jan. 20, 2012)

46

(denying summary judgment where plaintiff claimed that defendant officer intentionally slammed his car door onto plaintiff's leg); *Wang*, 2012 WL 92423, at *7 (denying summary judgment on excessive force claim where Plaintiff claimed that officer dragged her out of her car by pulling her hair); *Felmine v. City of New York*, No. 09-CV-3768, 2011 WL 4543268, at *18 (E.D.N.Y. Sept. 29, 2011) (denying summary judgment where plaintiff alleged officers shoved him into a police car, slammed him against the wall, and placed unreasonably tight handcuffs on him); *Sloane*, 2010 WL 1914857, at *1, *4 (S.D.N.Y. May 12, 2010) (denying summary judgment where Plaintiff alleged that police officers hit him several times without provocation in effectuating arrest, slammed him against a wall, and punched him after he was already handcuffed); *Jean-Laurent v. Hennessy*, No. 05-CV-1155, 2008 WL 3049875, at *11-12 (E.D.N.Y. Aug. 1, 2008) (denying summary judgment where plaintiff alleged that he was slammed against police car and restrained in a painful manner during course of arrest); *accord Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (holding that allegation that officer punched arrestee in the stomach constituted excessive force where arrestee neither posed danger to the officer nor resisted arrest).

Plaintiff alleges that he felt sharp pain and sought medical attention, though he has not alleged any significant, lasting injury. But, Plaintiff need not show "permanent or severe" injuries to maintain an excessive force claim. *See Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987). "[T]he Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." *Richardson v. Providence*, No. 09-CV-4647, 2011 WL 3701887, at *7 n.3 (E.D.N.Y. Aug. 22, 2011); *see also Maxwell v. City of New York*, 380 F.3d 106, 109-10 (2d Cir. 2004) (reversing district court's entry of summary of judgment where plaintiff had suffered pain, post-concussive syndrome, and "minor scrapes, bumps or bruises

[that] potentially could occur, often unintended, during any arrest"); *Robison*, 821 F.2d at 923-24 (allowing plaintiff's claim to survive summary judgment where allegedly excessive force caused only bruising, for which plaintiff did not seek medical treatment); *Pierre-Antoine v. City of New York*, No. 04-CV-6987, 2006 WL 1292076, at *5 (S.D.N.Y. May 9, 2006) (noting that although lack of severe injury may be considered by the jury as evidence that force was not excessive, it did not entitle defendants to judgment as a matter of law).

Therefore, because a factual dispute exists about whether Gorr used excessive force against Plaintiff, summary judgment is denied on Plaintiff's excessive force claim against Detective Gorr.[28]

---

[28] For this same reason, Gorr is not entitled to qualified immunity on Plaintiff's excessive force claim. Police officers are entitled to qualified immunity for their actions if their "'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kerman v. City of New York*, 261 F.3d 229, 236 (2d Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Here, Plaintiff's right to be free from excessive force under the Fourth Amendment was clearly established at the time. *See Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (noting that it is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited"); *Jean-Laurent*, 2008 WL 3049875, at *17 ("Here, it is indisputable that [plaintiff's] right to be free of unreasonable search and seizure under the Fourth Amendment . . . with respect to excessive force . . . is clearly established"). The relevant inquiry, then, is whether a reasonable officer could believe that it was reasonable to hit Plaintiff in this situation. As the Court has already determined that it cannot say as a matter of law that Gorr's alleged use of force was objectively reasonable under the circumstances, Gorr is likewise not entitled to qualified immunity. *See Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) (reasoning that since "plaintiffs' version, if true, would establish a constitutional deprivation, our analysis on the qualified immunity defense for the excessive force claim rests solely on the reasonableness of defendants' actions"); *Diaz v. City of New York*, No. 00-CV-2944, 2006 WL 3833164, at *11 (E.D.N.Y. Dec. 29, 2006) (denying summary judgment on qualified immunity grounds when a reasonable officer would have known that his actions violated plaintiff's right to be free from excessive force).

b. Claims Against Colonel Smith and Corporal Gardner for Failing to
Perform Supervisory Duties

Plaintiff claims that Smith and Gardner ignored his requests for their assistance in filing a

complaint and assault charge against Gorr.  (*Gorr* Compl. ¶¶ 31-34, 43-47; Pl.'s Aff. in Opp'n to

Indiv. Defs. ¶¶ 17-19, 21.)  However, Plaintiff has not stated a cognizable claim under § 1983

against Smith and Gardner for their alleged inaction in the face of his requests.  Indeed, courts in

the Second Circuit have long held that an individual has no constitutionally protected right to an

investigation by government officials of alleged wrongdoing by other government officials.  *See*

*Johnson v. Ruiz*, No. 11-CV-542, 2012 WL 90159, at *4 (D. Conn. Jan. 10, 2012) (holding that

§ 1983 plaintiff had no constitutionally protected right to a proper investigation of his claims

against an arresting police officer); *Allen v. N.Y.C. Dep't of Corr.*, No. 06-CV-7205, 2010 WL

1631404, at *2 (S.D.N.Y. Apr. 19, 2010) (reasoning that plaintiff could not "claim[] a

constitutional right to have prison officials investigate his attack [as] there is no constitutional

right to an investigation by government officials." (internal quotation marks omitted)); *Kaminski*

*v. Hayes*, No. 06-CV-1524, 2009 WL 3193621, at *4 (D. Conn. Sept. 30, 2009) ("Plaintiff has no

constitutional right to an investigation . . . of the detectives about whom he complained."); *Lewis*

*v. Gallivan*, 315 F. Supp. 2d 313, 316 (W.D.N.Y. 2004) ("[T]he law is well settled that no

private citizen has a constitutional right to bring a criminal complaint against another

individual."); *Stone v. Dep't of Investigation of N.Y.*, No. 91-CV-2471, 1992 WL 25202, at *2

(S.D.N.Y. Feb. 4, 1992) ( "There is . . . no constitutional right to an investigation by government

officials."); *accord Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) (holding that

"the benefit that a third party may receive from having someone else arrested for a crime

generally does not trigger protections under the Due Process Clause"); *Harrington v. Cnty. of*

*Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010) (applying *Castle Rock* to dismiss § 1983 claim against county for lack of investigation into death of plaintiff's son).

As such, Plaintiff is unable to demonstrate that Smith's and Gardner's alleged inaction deprived him of any constitutional right.  "Because [Plaintiff] had no right to an investigation and had no right to have [Gorr] prosecuted, his allegations regarding inadequate or improper investigations and the failure to [assist Plaintiff in] press[ing] charges against [Gorr] fail to state a claim" cognizable under § 1983.  *Johnson*, 2012 WL 90159, at *5; *see also Kaminski*, 2009 WL 3193621, at *4 (holding that because plaintiff had no right to an investigation of the detectives about whom he complained, he failed to state a § 1983 claim against defendants for their failure to respond to his letters requesting an investigation).  Therefore, the Court grants summary judgment to Defendants Smith and Gardner on Plaintiff's claim that they failed to take action on his requests to file a complaint against Gorr.

### c. Claims Against Colonel Smith Regarding Plaintiff's Grievances and the Sullivan County Jail Law Library

Plaintiff claims that Smith did not take sufficient action on the grievances that Plaintiff submitted while at the Sullivan County Jail.  Plaintiff also claims that the Sullivan County Jail law library was inadequate, and that he was sometimes denied access to the law library. (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶¶ 16-17, 20.)

### i. Sullivan County Jail Grievance Procedure

To the extent that Plaintiff attempts to state a claim against Smith for not adequately addressing Plaintiff's grievances, such a claim is not cognizable under § 1983.[29]  A prisoner has

---

[29] Plaintiff claims that Smith violated his constitutional rights when he ignored Plaintiff's grievances about the inadequate law library; that Smith violated his constitutional right to equal protection when he ignored Plaintiff's grievances about having to choose between going to the

no constitutional right to a prison grievance procedure or to have his grievances investigated.

*See Johnson v. Enu*, No. 08-CV-158, 2011 WL 3439179, at *13 (N.D.N.Y. July 13, 2011)

("[I]nmate grievance programs created by state law are not required by the Constitution and

consequently allegations that prison officials violated those procedures [do] not give rise to a

cognizable § 1983 claim."), *adopted by* 2011 WL 3439524 (N.D.N.Y. Aug. 5, 2011); *Torres v.

Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("[Plaintiff] does not have a protected

liberty interest in having his grievances investigated at the level of thoroughness that he desires,

and therefore he can not assert a . . . claim as to such failures."); *Cancel v. Goord*, No. 00-CV-

2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (holding that "inmate grievance

procedures are not required by the Constitution," and therefore failure to ensure that grievances

are properly processed does not create a claim under § 1983).  Because Smith had no

constitutional obligation to provide Plaintiff meaningful access to the internal grievance

procedure, Plaintiff's allegations that Smith "failed to take appropriate remedial action in

response to his grievances and letters of complaint, provide no basis for finding liability against

[Smith] pursuant to section 1983."  *Brown v. Graham*, No. 07-CV-1353, 2010 WL 6428251, at

*8 (N.D.N.Y. Mar. 30, 2010).

     Although Plaintiff cannot state a claim against Smith for his alleged failure to take action

on Plaintiff's grievances, he *can* challenge the alleged violations of his constitutional rights

which were not adequately addressed by the prison grievance system — to wit, his complaints

about the law library.  *Torres*, 246 F. Supp. 2d at 342 n.1; *see also Johnson v. Barney*, No. 04-

---

law library and going to recreation; and that he violated Plaintiff's constitutional rights by failing
to promulgate and implement a reliable grievance submission policy.  (Pl.'s Aff. in Opp'n to
Indiv. Defs. ¶ 25.)

CV-10204, 2007 WL 900977, at *1 (S.D.N.Y. Mar. 22, 2007) ("While a prisoner's right to meaningful access to the courts is clearly protected by the First Amendment right to petition the government, the same cannot be said for a prison grievance system [since] the prisoner ha[s] other avenues available to raise his claims such as his right to seek meaningful relief in court." (citation omitted)), *aff'd*, 360 F. App'x 199 (2d Cir. 2010).  The Court accordingly turns to Plaintiff's claims regarding the law library.

<u>ii. Sullivan County Jail Law Library</u>

Plaintiff claims that the Sullivan County Jail did not adhere to its purported policy of providing prisoners with access to legal materials housed at the Sullivan County Courthouse law library, and that for the first twenty months of his incarceration (from approximately November 2005 to June 2007), he was denied access to all such legal materials.  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶¶ 20, 25.)  Plaintiff also claims that he was not provided access to the law library on every occasion he requested it, though he admitted in his deposition that he visited the law library on over one hundred occasions.  (Hayes Dep. 124:5-10.)[30]  He seeks to hold Smith liable for these alleged violations.

The Supreme Court has long held that prisoners are constitutionally entitled to meaningful access to the courts, *see Ex parte Hull*, 312 U.S. 546, 549 (1941), and in *Bounds v.*

---

[30] Plaintiff's claim about having to choose between going to the law library and going to recreation is borderline frivolous as it is conclusively contradicted by the evidence in the record. Smith's analysis of the jail records shows that during the 673 days which Plaintiff was an inmate at Sullivan County Jail, there were only 51 occasions where there was some overlap between the time Plaintiff's cell block was called for recreation and the time he was allotted to go to the law library.  (Smith Aff., Indiv. Defs. ¶ 36; Smith Aff., Cnty. Defs. Ex. G.)  Moreover, Plaintiff's claim is fatally undercut by the fact that Plaintiff *chose not to go* to recreation on 244 days where there was absolutely no scheduling conflict between Plaintiff's library and recreation time. (Smith Aff., Cnty. Defs. Ex. G.)  Plaintiff, like all of us, must live with his choices.

*Smith*, 430 U.S. 817 (1977), the Supreme Court held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law," *id.* at 828.  However, in *Lewis v. Casey*, 518 U.S. 343 (1996), the Supreme Court held that to state a claim that his right of access to the courts had been violated, a prisoner must show actual injury.  *Id.* at 349.  The Court "repudiated" an "expansive understanding of *Bounds*," *id.* at 353 n.4, holding that "[b]ecause *Bounds* did not create an abstract, freestanding right to a law library or legal assistance, an inmate cannot establish [a] relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense," *id.* at 350.  *See also Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001) ("Because law libraries and legal assistance programs do not represent constitutional rights in and of themselves . . . prisoners must demonstrate actual injury in order to have standing." (internal quotation marks omitted)).

　　　To show actual injury, a prisoner must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim," *Lewis*, 518 U.S. at 357, which the Supreme Court has limited to claims attacking the prisoner's sentence, directly or collaterally, or challenging the conditions of the prisoner's confinement, *id.* at 355.  *See also Brown v. Choinski*, No. 09-CV-1631, 2011 WL 1106232, at *1 (D. Conn. Mar. 23, 2011) ("[I]n order to prevail on a right of access to courts claim, a plaintiff must first demonstrate that the defendant's conduct deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court."); *Collins v. Goord*, 438 F. Supp. 2d 399, 415-16 (S.D.N.Y. 2006) ("This actual injury requirement is not satisfied by just any type of frustrated legal claim, because the Constitution guarantees only the tools that inmates need in order to attack their sentences,

directly or collaterally, and in order to challenge the conditions of their confinement." (internal

quotation marks omitted)).  The "[i]mpairment of any *other* litigating capacity is simply one of

the incidental (and perfectly constitutional) consequences of conviction and incarceration."

*Lewis*, 518 U.S. at 355 (emphasis in original).

Plaintiff has failed to articulate any cognizable injury that he suffered because of the

alleged inadequacy of the law library or from his alleged denial of access to the law library.

Instead, Plaintiff asserts that he was injured because he was denied access to federal case law,

which prevented him from conducting adequate research before his suppression hearing (while

he was represented by counsel).[31]  (Pl.'s Aff. in Opp'n to Cnty. Defs. ¶¶ 12-22.)  However,

courts within the Second Circuit have consistently held that "[a] state is not constitutionally

obligated to provide a pretrial detainee with additional legal resources, such as a law library,

when that detainee is already represented by counsel."  *Kowalyshyn v. Willett*, No. 10-CV-752,

2011 WL 1793257, at *4 (D. Conn. May 11, 2011) (holding that where § 1983 plaintiff was

represented by counsel before and at his criminal trial, he could not state a violation of his right

of access to the courts for being completely denied access to a prison law library); *see also*

*Bourdon v. Loughren*, 386 F.3d 88, 94 (2d Cir. 2004) ("[W]e explicitly hold that the appointment

of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide

prisoners, including pretrial detainees, with access to the courts in conformity with the

requirements of the [Constitution]."); *Spates v. Manson*, 644 F.2d 80, 85 (2d Cir. 1981) (holding

---

[31] Plaintiff was represented by counsel from his first court appearance in December 2005 until April 27, 2007, when he moved to withdraw his guilty plea.  (Hayes Dep. 151:3-8.) However, from April 25, 2007 until Plaintiff's sentencing in August 2007, he was proceeding pro se with the assistance of a court appointed attorney, Donna Lasher, Esq.  (*Id.* at 151:19- 152:3.)  Plaintiff alleges no injury that allegedly occurred during this time period.

that "where state-financed legal assistance is available" a prisoner does not have "a right to

state-financed library resources"); *Pine v. Seally*, No. 09-CV-1198, 2011 WL 856426, at *10

(N.D.N.Y. Feb. 4, 2011) ("If, as their allegations suggest, plaintiffs had been appointed

attorneys, no access to any law library was required."), *adopted in part by* 2011 WL 856421

(N.D.N.Y. Mar. 9, 2011); *Benjamin v. Kerik*, 102 F. Supp. 2d 157, 163-64 (S.D.N.Y. 2000)

("The Second Circuit has held that the right of access to courts is not infringed where prisoners

are not supplied with an adequate prison library, so long as they were provided with appointed

counsel.")  Plaintiff, therefore, cannot state a claim that his constitutional right of access to the

courts was violated while he was represented by Mr. Cannick.[32]

To get around this axiom, Plaintiff argues that Mr. Cannick did not provide effective

assistance during Plaintiff's suppression hearing, and thus Plaintiff claims injury from his

alleged inability to access federal case law before and during his suppression hearing in

December 2006 and January 2007.  (Pl.'s Aff. in Opp'n to Cnty. Defs. ¶¶12-22.)  However, in

*Bourdon*, the Second Circuit held that "when a prisoner with appointed counsel claims that he

was hindered by prison officials in his efforts to defend himself or pursue other relevant legal

claims, he must show that, on the facts of his case, the provision of counsel did not furnish him

with the *capability* of bringing his challenges before the courts, not that he was denied effective

representation in the court."  386 F.3d at 98 (emphasis added).  The *Bourdon* court explicitly

---

[32] It does not matter that Mr. Cannick was retained rather than appointed, as Plaintiff
originally was appointed counsel by the state and then later chose to retain Mr. Cannick.  (Hayes
Dep. 151:2-152:25.)  During the time that Plaintiff was *entitled* to have appointed counsel, he
cannot claim that any alleged inadequacy in the law library violated his constitutional right of
access to the courts.  "'The rule is that defendant[s] ha[ve] the right to legal help through
appointed counsel, and when [they] decline[ ] that help, other alternative rights, like access to a
law library, do not spring up.'"  *Benjamin v. Kerik*, 102 F. Supp. 2d 157, 164 (S.D.N.Y. 2000)
(quoting *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000)).

declined to import the Sixth Amendment standard for ineffective assistance of counsel into its

analysis, *id.* at 99 n.14, and adopted a completely different test — whether the prisoner was

deprived of the capability to bring his challenges before the courts — to determine whether an

inmate represented by counsel had been deprived of the constitutional right of access to the

courts, *id.* at 98.

It is abundantly clear that while represented by Mr. Cannick, Plaintiff was not hindered

in his capacity to bring "his challenges before" the Sullivan County Court.  In fact, the record

clearly establishes that Mr. Cannick filed a lengthy omnibus pre-trial motion, conducted two

days of suppression hearings, and filed a supplemental affirmation in support of Plaintiff's

suppression motion on January 31, 2007.  Whether Plaintiff believes that Mr. Cannick's

"representation in the court" was effective does not provide the basis of a claim for denial of

access to the courts.  *Id.* at 98.  "Accordingly, notwithstanding [Plaintiff's] allegation that his

attorney was ineffective, the fact that [Plaintiff] was represented by counsel . . . and that

[Plaintiff] has not demonstrated that he was hindered from pursuing a particular legal claim,

establish[es] constitutionally acceptable access to the courts."  *Id.* at 99.[33]  As Plaintiff's only

---

[33] Furthermore, Plaintiff's claim that he was denied sufficient access to the law library is
without factual support.  Plaintiff does not have a constitutional right to access the law library
whenever he wishes and has failed to show any injury resulting from allegedly not being called
to the law library every time he made a request.  *See Nevarez v. Hunt*, 770 F. Supp. 2d 565, 567
(W.D.N.Y. 2011) ("There is no freestanding right of prisoners to use a law library . . . and
restrictions on an inmate's access to a law library will generally not give rise to a constitutional
claim, unless those restrictions have the effect of denying the inmate meaningful access to the
courts."); *Melendez v. Haase*, No. 04-CV-00073, 2010 WL 5248627, at *7 (S.D.N.Y. Dec. 15,
2010) ("The Constitution does not require unlimited and unrestricted library access, and officials
may place reasonable restrictions on inmates' use of facility law libraries as long as those
restrictions do not interfere with inmates' access to the courts." (internal quotation marks
omitted)).  Here, the record clearly establishes that Plaintiff spent over 500 hours in the law
library while he was an inmate at the Sullivan County Jail and that he visited the law library on
345 out of the 673 days he was incarcerated there.  (Smith Aff., Cnty. Defs. Ex. G.)  Thus,

alleged injury arose during Plaintiff's suppression hearing, his claim fails as a matter of law.

Therefore, Smith is entitled to summary judgment on all of Plaintiff's claims.

### 2. County Defendants

#### a. Sullivan County Sheriff's Department

Plaintiff has named the Sullivan County Sheriff's Department as a Defendant in this case.

County Defendants argue that "[t]he Sullivan County Sheriff's Department, since only a

department of the County, is not a legal entity capable of being sued." (Cnty. Defs.' Mem. of

Law 10.) Indeed, several courts have held that "[u]nder New York law, departments which are

merely administrative arms of a municipality, do not have a legal identity separate and apart

from the municipality and cannot sue or be sued." *Hall v. City of White Plains*, 185 F. Supp. 2d

293, 303 (S.D.N.Y. 2002); *see also Fanelli v. Town of Harrison*, 46 F. Supp. 2d 254, 257

(S.D.N.Y. 1999) (same); *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) ("A police

department cannot sue or be sued because it does not exist separate and apart from the

municipality and does not have its own legal identity.").

Accordingly, where both the municipality and the municipal agency have been named as

defendants, courts have dismissed the claims against the agency. *See, e.g.*, *Hall*, 185 F. Supp. 2d

at 303 ("Because plaintiff has named the City of White Plains as a defendant, any claims against

the [White Plains Department of Public Safety ('WPDPS')] are redundant. WPDPS does not

---

because Plaintiff was routinely given access to the law library, even if not given access on
demand, his claim is utterly meritless. *See Guarneri v. West*, 782 F. Supp. 2d 51, 58 (W.D.N.Y.
2011) (dismissing claim for denial of access to the courts where "[p]laintiff [did] not explain in
what way his more than fifty documented visits to prison law libraries were insufficient to permit
him to fully litigate his convictions and grievances . . . or specify any actual injury that resulted
from a correctional facility's failure to provide him with unlimited access to its law library").

have its own legal identity, and therefore the claims against it are dismissed."); *Manning v. Cnty. of Westchester*, No. 93-CV-3366, 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995) (removing the Westchester County Police Department as a named defendant where the County of Westchester, the real party in interest, was already a named defendant).  Here, the Court concludes that the weight of authority supports the view that the Sullivan County Sheriff's Department is not a suable entity, and in light of the fact that Plaintiff will not be prejudiced by the removal of the Sheriff's Department as a named defendant — because the County of Sullivan already is named and would be responsible for any resulting judgment — the Court will grant summary judgment for the Sheriff's Department on all claims against it.

### b. County of Sullivan

County Defendants further argue that Plaintiff's claims against the County must fail because Plaintiff has failed to allege any facts demonstrating the existence of an official policy or custom of the municipality which led to Plaintiff's alleged injuries.  (Cnty. Defs.' Mem. of Law 9-10.)  "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008).  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As

subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under Section 1983 "by application of the doctrine of *respondeat superior*."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself* commits a wrong" (emphasis in original)).  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").

Moreover, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]."  *Newton*, 566 F. Supp. 2d at 271; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  In the end, therefore, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."  *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404).

With regard to the actions of Gorr, Starner, and Morgan, Plaintiff has failed to adduce *any* evidence, or even allege, that the County had municipal policies or customs in place that sanctioned the assault of suspects, the search and arrest of individuals without probable cause, or the commission of perjury by police officers.  Furthermore, as discussed above, with the exception of Plaintiff's excessive force claim against Gorr, Plaintiff's remaining claims against Gorr, Starner, and Morgan are barred either by preclusion or are not legally cognizable.  And, Plaintiff's excessive force claim against Gorr does not reflect the alleged acts of a policymaker, nor has Plaintiff anywhere alleged that Gorr's actions were undertaken pursuant to a municipal policy or custom.

Plaintiff also has failed to adduce evidence of a municipal policy or custom for his claims arising out of his incarceration in the Sullivan County Jail.  As discussed above, Plaintiff's claims against Smith and Gardner relating to lack of investigation of his complaints fail as a matter of law, as do Plaintiff's claims against Smith for failing to properly address his grievances.  Lastly, Plaintiff claims that he was sometimes denied access to the law library, that he had to choose between attending recreation and visiting the law library, that the law library was inadequate, and that the jail did not adhere to its policy of providing prisoners with access to legal materials that were not located within the facility.  However, as discussed above, Plaintiff has no independent constitutional right to access the law library and he has failed to state a claim for denial of right of access to the courts because he has not shown that he suffered any legally cognizable injury.

Even assuming, *arguendo*, that he had stated such a claim, Plaintiff neither alleges, nor offers any evidence to support an inference that the Sullivan County Jail was acting pursuant to a municipal policy or custom in allegedly denying his access to legal material.  According to

Defendant Smith, the Sullivan County Jail adopted a policy whereby inmates could request legal reference materials from the Hamilton O'Dell Library at the Sullivan County Courthouse to be made available to them.  (Smith Aff., Cnty. Defs. ¶¶ 7-9.)  In fact, Plaintiff admitted in his Affidavit in Opposition to the County Defendants' motion that "Smith's assertions, if accepted as true, only show that the jail had a policy in place that met State minimum standards; Col. Smith's assertions do not establish that the jail adhered to its purported policy."  (Pl.'s Aff. in Opp'n to Cnty. Defs. ¶ 8.)  Plaintiff also states that he "cannot attest to the veracity, or lack thereof, of Smith's assertions" regarding the jail's policy of providing prisoners with access to legal materials located outside the jail, but claims "that the jailors were not complying with this policy . . . ."  (Pl.'s Aff. in Opp'n to Indiv. Defs. ¶ 20.)  Therefore, at most, Plaintiff has alleged that individuals within the Sullivan County Jail were not adhering to the County's stated policy of providing prisoners with access to legal materials, and as such, he cannot maintain a claim against the County.  *See Walker v. Shaw*, No. 08-CV-10043, 2010 WL 2541711, at *7 (S.D.N.Y. June 23, 2010) ("[T]he failure to follow a policy . . . is the antithesis of a link between policy and action[].").

   As Plaintiff has failed to identify any municipal policy or custom that caused him to be subjected to a denial of a constitutional right, County Defendants' Motion for Summary Judgment is granted in its entirety.

### III. Conclusion

For the reasons stated herein, Individual Defendants' Motion to Dismiss as Against Cole is GRANTED, County Defendants' Motion for Summary Judgment is GRANTED, and Individual Defendants' Motion for Summary Judgment is granted as to all claims except Plaintiff's excessive force claim against Detective Gorr. The Clerk of Court is respectfully directed to terminate the pending motions, (No. 07-CV-7667, Dkt. Nos. 58, 65, 67 & No. 09-CV-2071, Dkt. Nos. 20, 22). The Clerk of Court is respectfully directed to enter judgment for the County of Sullivan and to close case number 07-CV-7667. The Clerk of Court is also directed to enter judgment for all Defendants except for Detective Jason Gorr in case number 09-CV-2071.

SO ORDERED.

Dated:      White Plains, New York
            March 30, 2012

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

<u>Service List:</u>

Earl Hayes
Din# 07-A-4800
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562
*Pro Se Plaintiff*

Michael Davidoff
Drew, Davidoff & Edwards Law Offices, LLP
13 Liberty Street, Po Box 1040
Monticello, NY 12701
(845)-794-5000
Email: ddelaw@verizon.net
*Counsel for County Defendants*

Samuel S. Yasgur
County of Sullivan
100 North Street
Monticello, NY 12701
(845)-794-3000
Email: samuel.yasgur@co.sullivan.ny.us
*Counsel for Individual Defendants*